Robertson, J.
—By the second article of the will in controversy, the testator gives to his wife, in lieu of dower, a legacy, an annuity for life, and also the use for life of his “ books, wines, horses, carriages, furniture, and household effects,” which he bequeaths to any child or children of his living at the time of her death, and in case of no such child or lineal descendants of them, to his heirs at law.
The next two articles of the will are as follows:
“ 3. The rest and residue of my personal property I give, devise, and bequeath to my executors hereafter named, in trust, and for the use of my daughter Elizabeth Sarah, not to be paid by them into her hands until she shall have attained the age of twenty-four years.; and if she shall marry before that age, with the consent of her mother, I hereby expressly charge my executors not to pay to her or . her husband, any part of the personal property, or of the income arising therefrom, unless he, the said husband, shall previously to her marriage have settled upon her, for her private and separate use and maintenance, a sum equal to the one-half of the said personal property. And I hereby charge it upon her, as a duty to her father, to insist upon such settlement being made, beyond and out of the power of her husband, or herself, or both of them, jointly, to change. If my said daughter should marry without the *267 consent- of her mother, my executors are hereby directed not to pay to her her portion of my personal property until she shall arrive at the age of thirty years; and until such period they are directed not to pay her more than one-half of the income arising from such portion. In case of her death before attaining the age of twenty-four years, as aforesaid, leaving issue, such issue to receive, in equal parts, her said portion of her personal property.”
“ 4. All my real estate I give, devise, and bequeath to my daughter Elizabeth Sarah, with all the rents, produce, and profits thereof, to have and to hold, for her use, benefit and behoof, for and during the term of her natural life, and after her death to the child or children she may leave, to be equally divided between them, should she leave more than one child, when he, she, or they may have attained respectively the age of twenty-one years, to have and to hold, to his, her, or their use, benefit, and behoof, forever, share and share alike.”
The remainder of the fourth article consists of a direction to sell part of the testator’s real estate, to pay incumbrances on the residue, and a power to grant leases.
The fifth article then succeeds as follows :
“ 5. As, at the time of making this will, I have but one child, Elizabeth Sarah Ray, I have made no provision for any other child or children I may have, either before my death or posthumous. But my will, in case of my having such child or children as aforesaid, is as follows : my personal property shall be divided in equal shares among my children—my daughter Elizabeth Sarah being, in such case, entitled to her portion only, instead of the whole, to be paid to her and secured to her in manner and form before mentioned. If any remaining child or children should be a girl or girls, then the provisions of the third section of this, my will, are to be applied to her or them; if one or more should be a boy or boys, then he or they are to have their share of the personal property, paid into his or their hands, when he or they shall have attained respectively twenty-one years. The provisions of the fourth section of *268 this, my will, as regards real estate, are to be extended, in like manner, to any child or children of mine born subsequently to the date of this my last will; he, she, or they to have equal parts, with my said daughter Elizabeth Sarah, •a life estate in said real estate, share and share alike, with remainder to their issue.”
The last three recited articles contain all tñe provisions in the will for the testator’s immediate descendants; it will be important, therefore, to consider what disposition they make of the testator’s estates, and upon what conditions and limitations, before inquiring how far the sixth article infringes upon the rights conferred by them. •
In the first place, the testator-confers upon his children, (if they reach the ages prescribed in the third and fifth articles according to their sex,) the absolute ownership of the residue of his personal property not disposed of in the second article, in the strongest possible language; indeed, so strong as hardly to admit of the. supposition that the testator could have had in his mind at the time of so expressing himself, any idea of divesting such ownership upon any contingency; thus, although the share of the child named in the third article is retained until she reach the age of twenty-four, and in case of her death before reaching that age, leaving issue surviving her, it is given to such issue; yet, if she reach that age, it is given to her absolutely, without mentioning issue, nor is this defect, if defect it be, supplied anywhere in the will. Such absolute ownership is only postponed six years, not defeated even by marriage, without the mother’s consent, within the limit of the prescribed age. The fifth article not only recognizes the gift of absolute ownership in the third, by speaking of the daughter mentioned in the latter as being thereby entitled to have the property paid or secured to her, but in emphatic terms directs the share of every male child to be paid into his hands when he comes of age. The language of the fourth article, instead of conflicting with” this view of the preceding and following one, strengthens it by contrast,, for it shows the testator knew how to give *269 when he intended it, a distinct life estate, with remainder to issue; if his intention had been in any respect similar in regard to personal estate, he would have shown it in a similar manner. To overthrow so strong a manifestation of an intention to give the absolute ownership of the personal property to the testator’s children who arrive at the fixed age, the clearest language should be required in other parts of the will, and if claimed to be found in a provision entirely for the benefit of collateral relatives, it could only be considered as a caprice and not the result of a consistent and coherent plan.
The absence of any provision in the will for the testator’s brother and sister is also worthy of remark, because he provides under certain circumstances presently to be examined, for their families, by the sixth article, and does not undertake to account for passing them by; and even then, as will presently appeal-, does not provide for such families, unless both his brother and sister be dead. Either of them who outlived him, if he left no descendants, would take a moiety of both real and personal estate, as heirs at law and next of kin, unless prevented by the sixth article. If both died before him, under such circumstances, and any of their grandchildren should be orphans at the time of his death, they would, under the statute of distribution, be excluded from any interest in his personal estate. (2 R. S. 91, § *75, Subd. 11.)
The testator, however, by the three articles of his will before referred to, not only made every disposition intended by him for the benefit of his own family, but meant to provide for every contingency"which he thought might affect them, leaving his property, in every other contingency, either to pass as in case of intestacy, or to be disposed of by subsequent parts of his will. Thus (except in regard to real estate) he provides for the result, either of his children attaining a certain age, or dying under it, leaving issue; he also provides for an increase of his children, even carefully naming posthumous ones, so as to prevent the effect of the statute, (2 R. S. 64, § 38; Id. 65, § 44,) which would give *270 them an estate unfettered by any condition or limitation, and prescribes what his will is to be in case of his “ leaving such child or children.”
Eollowing these words, in the sixth article, and adding thereto “ at the time of my death,” he declares :
“ 6. In case I have no child or children living at the time of my death, and no posthumous child; or in case such child or children should die without lawful issue, and I should have no lineal descendants, I give, devise and bequeath my whole estate, real and personal, to the children whom my brother, Robert Ray, and my sister, Mary, wife of John A. King, may leave, or the child and children of any who may die before me, (such last mentioned child or children to inherit only its father’s or mother’s share,) to be divided equally and in equal parts among such children, per capita, and not per stirpes, when the eldest of such children shall have attained the age of thirty-four years; each child who, at the time of such division, may be under age, to receive his or her portion on reaching the age of twenty-one years.”
Before examining the effect of this article upon the preceding ones, it may be well to take into consideration the fact, that the issue of such of the testator’s children as might die before him, leaving issue, after they attained, according to their sex, the ages fixed by the third and fourth articles, might possibly take by virtue of the statute, (2 R. S. 66, §-42,) the same estate in fee which they would take under the will if their parent had not reached the prescribed age; it would, therefore, be not inappropriate for the testator to commence a provision for collateral relatives, by excluding the possibility of there being any of his own family living to take at the time of his death; and declaring not only that he is to leave no children, but that he is to be without lineal descendants before such relatives can take.
If, however, the failure of his own line at a future period,, after his own death is contemplated in such article, and he intended in such case to devise to collateral relatives what *271 he had already given absolutely to such of his children as should reach a fixed age, it would become clearly inconsistent with the third and fifth articles, and would be reconcilable with them only by cutting down the absolute ownership given therein to a life estate; thus making the estate of any son he might have responsible over to his nephews and nieces for all the personal estate received by him under the fifth article. For this purpose, a design must be manifested as clearly,' at least, as the contrary one was by the language of the preceding articles.
In order to fully understand such article, it must be examined not only in reference to the contingency upon which the beneficiaries are to take, but the mode of determining who they are to be, together with the substitution of some in the place of others, the interest they are to take, and the period of their enjoyment, all of which are embraced in the due understanding of it.
The first question which arises upon such article is, as to the contingency on which the collateral relatives mentioned in it are to. take, being the time of the failure of the descendants of the testator intended thereby; whether it refers to the testator’s death, or some future time, and if the latter, whether it is indefinite, or limited to any time or any event.
I do not consider the introduction of the words “posthumous child,” in this and the preceding article, as at all decisive by itself of an intention to postpone the failure of issue until after the testator’s death; and I think the reason for inserting them, for a different purpose already alluded to, sufficient.
It is true, that until the birth of a child en ventre sa mere, at the death of its father, is determined, the fact of its father dying without surviving issue cannot be ascertained : but its death before its birth leaves the failure of issue, in the contemplation of law, at the parent’s death; and the same rule holds in regard to a remainder dependent upon such contingency, which is vested at the testator’s death, subject to be defeated by the birth of a posthumous child; *272 although, therefore, it 'might be necessary to exclude the existence of a posthumous child,nuch exclusion alone would not affect the time of vesting of the estate in remainder.
There is one view of this case, in reference to the time of such failure of issue, which seems perfectly decisive, and to which no answer has been afforded : if the failure ,of issue, referred to in the sixth article, is to occur at the testator’s death, the whole provision, of course, becomes operative; but if it is an indefinite failure of issue, the remainder is void. It seems to have been asssuméd, that the words “ dying without lawful issue,” limited the failure of issue to the death of the testator’s children; this it clearly would not have done before the passage of the Revised Statutes, (Paterson v. Ellis, Ex’r., 11 Wend. Rep. 253, 671,) but that assumption is placed entirely upon the effect of the statutory provision (1 R. S. 724, § 22) construing the word “ issue ” as those living at the death of the ancestor ; but this cannot control the meaning of the words “lineal descendants,” immediately afterwards used by the testator, and apparently for the very purpose of preventing such construction, being words not mentioned in the statute. He himself interprets the effect of the previous contingencies, by declaring in the broadest terms, “ and thus I should have no lineal descendants.” No power of artificial reasoning or construction can so wrench these words from then-natural meaning or limit them, as to show that it was the testator’s intention that the remainder should take effect before his own line had utterly and entirely failed, unless it be conceded that his own death was the time of such failure of issue contemplated by him.
But it may still be proper to dispose of the views which this case presents, if the failure of issue be held not to be indefinite. It may not, however, be inappropriate to notice preliminarily, that although the child named in the will, has died without issue, under the prescribed age, and after the testator’s death, her share of her father’s estate cannot yet pass to the collateral relatives mentioned in the sixth article; that it does not pass under any provision in the *273 will, and must pass by virtue of the statutes of distribution and descents to the next of kin and heirs at law of the testator, as undisposed of property, subject to any effect upon their rights of. this sixth article. If that article has any effect, it must be on the score of its limiting the operation of those statutes, and. not any previous part of the will;
• it must, therefore, be construed in reference to the intestate share as if there were no other provision in the will. It would be extremely difficult, if not impossible, in such case, to establish that such article was intended to have any effect upon such share; particularly that the ownership conferred by those statutes on the surviving child, was to become a life estate in case she died childless; or what is still more improbable, that the third of such share of the personal property, or'a life estate in one-half of the real estate to which the testator’s widow is entitled, (2 R. S. 96, § 82, subd. 1; 1 R. S. 752, § 1,) is to be taken from her in case of the death of her remaining child without issue, and to be given to collateral relatives, although she would be allowed to retain it against the issue of such child. The result, therefore, is either that this share escapes the effect of the sixth article, or that the consequences before mentioned, legitimately formed part of the testator’s design in such article, in case the failure of issue intended by him therein was, that at the death of his children. It may also be observed, that the surviving child of the testator having reached the age fixed by the third article, is entitled under it to her share of the personal property as absolute owner, unless the sixth article makes such ownership depend on her leaving children at her death.
If the statutory interpretation of “ issue” be not sufficient to reduce the failure of issue to the death of the testator’s children, it is proposed to accomplish the same purpose by a change of words and construction of such substituted words : as the word “ leave ” necessarily and properly means “ have surviving at the time of their death,” the qualification is to be omitted, and “ have” left by itself, but as that word standing alone by long settled construction is *274 applicable to any time; it is further proposed to limit it by the insertion, actually, or by construction, of the words “ at the time of my death," or, “the death of such children without issue." The introduction of the latter qualification in such case so palpably depends solely on construing the previous failure of issue, to be confined to the death' of the tetsator’s children, that it must stand or fall with it, and sufficient reasons have already been assigned to show that there is no foundation for such construction, or the question at issue is begged in construing one "or other part of the provision, thereby reasoning in a circle. The object to be attained by such changes, as well as the justification of them, consists of the reduction thereby, of the number of lives within which the estate is to become alienable from four, consisting of those of the testator’s two children, and his brother and sister, to two, to wit, those of the former only, so as to make the provision legal. In reaching this, it is proposed to exclude all nephews and nieces of the testator born after his death, or at least after the death of his children, as well as the families of all who should die after him, if the nephews and nieces who are to take, are to be determined at the time of the death of his children.
The possible existence of the brother and sister of the testator, who might be equally dear to him as their children, and were nearer and'who could take under the second article of the will, is also ignored; these facts will become important hereafter on the question of intent; at present, it will only be necessary to notice them.
All these changes and results are sought to be justified by their creating a legal instead of an illegal provision, and then carrying out a supposed intent. They will, however, not only be found inconsistent with provisions of the will, with which they cannot be reconciled, except by violence to the language, without any warrant of authority, but it will be seen, also, that there is no intelligible or sensible intent to be gathered from the residue of the will, or from the - language of the article, which would not be better carried out by its entire omission if so construed.
*275 What has been already stated shows, conclusively, with what a clear expression of intention the testator had already given the ownership of personal property to his children, if they were of the prescribed age, giving no remainder to their issue, unless they died under it; yet it is proposed by construction to create a conflict between that and the sixth article, and then to reconcile such conflicting provisions, by making that ownership dependent upon the birth and survivorship of issue who are to take no interest in the property itself; for, I presume, it will hardly be contended that the sixth article, by any possible implication, can create such. Such conflict is created entirely by such artificial construction; for the third and sixth articles are perfectly reconcileable by construing the period of the failure of the children’s issue to be the testator’s death, as that of the want of children is expressly declared to be in the latter article. No principle of law justifies the creation of such a conflict, whefi: it can so easily be avoided without the change of a letter.
But, not only is the purpose for which such change is to be made not such a one as is justifiable upon any legal principle, but the changes, in themselves, are equally unwarranted, either as to the language or construction. The will itself shows that the testator fully comprehended the force of the word “leave,” and that he did not use it promiscuously for the word “have,” for he employed the former once before in the third, and twice in the fourth article, in its proper sense, for which no other word could be substituted : that sense has always been able to limit the indefinite failure of issue, which would be created by the use of the other word; Paterson v. Ellis, (ubi sup.,) and the difference of it from that of the other word precludes any interchange or substitution of the latter for it. (Doe v. Knowles, 1 Barn. & Ad. R. 324; Cross v. Cross, 1 Sim. R. 201.) Such a change is never warranted simply to convert an illegal into a legal provision. To prevent a provision from failing by reason of uncertainty, or to carry out an otherwise manifest intent, words may be rejected, *276 transposed, or supplied where apparently accidentally omitted. But to make a provision valid instead of void, courts have gone no farther than merely to overlook strict grammatical sense, substitute a popular for a technical meaning and adopt that one of two, where either may be applicable, which will accomplish such result. In no case have they gone so far as to substitute words of a different meaning, from those in the instrument under consideration. In this case the idea of abandonment, relinquishment, or parting with, which forms the essence of the word “ leaving,” cannot be extracted from it by any judicial alchemy.
The substitution merely of “ have ” for “ leave,”, is, how- ■ ever, not sufficient to accomplish the desired end; the words, “at the time of the death of such children,” or “ at the time of my death,” must be added actually or constructively. It is proposed to do the latter by dividing the process by which, before the passage of the Revised Statutes, courts had carried out the intent «yf a gift in remainder after a life estate to such children as another person might have, that is vesting the estate in those who first came in being, answering the description, and opening such estate to let in those of the same description who came into being afterwards, and not allowing the second part of such process to take effect. The same reason is assigned for this as before, to wit, the prevention of the creation of an illegal estate. But this directly interferes with what the law, as well as reason, has settled to be the intent of the testator in using the phrase in question, and accomplishes what is not such an intent. While such an operation was legal, it was the only mode of carrying out the testator’s intent; when it ceases to be so, one-half cannot accomplish the same end. This is the only reason assigned for giving such efficacy to the word “ have,.” when standing alone. It is not, however, a mere construction. It is, in fact, a limitation of the operation of a word by an event. Instead of taking the whole life of the brother and sister as the period during which the beneficiaries are to come into existence, which is both the popular and the *277 technical signification of the word “ have,” it is proposed to terminate such period at the death of the testator or his children. The previous part of the provision gives no color for this ^construction, as has been shown, and no rule of law can be found to warrant the insertion of the words to create it. The presumption of a legal intent can only go so far as to construe words already in an instrument in such a mode as to establish it, when they are open to two interpretations; not to add words for the purpose, unless to carry out an intent which appears otherwise from the instrument. The question is one entirely of the testator’s intent; courts cannot create a legal provision by first changing the words of an instrument", and then construing the substituted words so as to bring about such a result, simply because the words actually used would bear no other interpretation than an intent to create a void one. The whole of this artificial construction savors too much of strained refinement -to authorize its reception.
The other ground of conforming the expression to a manifest intent, is equally unsatisfactory as an explanation of the change. The intent which1 is urged to be so carried out, is contended by the counsel of the respondents to be one 11 to preserve the property of the testator in his own family, and with his own kindred.” Now, I apprehend the intent, to carry out which the language of a provision in an instrument may be moulded by an interpretation, must be one which would not be carried out without such provision, or at least not as well; any design with which such provision is consistent is not enough, it must be such a one as it is an instrument to carry out, otherwise the testator might equally well be supposed to have intended to let things take their natural course. If this sixth article had not been in the will, and his children had died under the age prescribed in the third and fifth articles, and without issue, his brother and sister would have taken all the estate, or if any child attained such prescribed age, all but the personal estate by the law of succession, if they were alive, and their children would have so taken if they were *278 then dead, leaving any; none of his collateral relatives would have been left out, except grand nephews and grand nieces, children of nephews and nieces deceased at the time of the inheriting of such estate, and they only under the statute of distribution, for whom, as will presently be seen, such article makes provision. This article does not in any way create any trust for the collateral relatives, so that his estate would have equally well remained with his kindred without- this provision as with it. The only purpose it could have accomplished in that way, would be to take away that ownership of personal property which he had given to his own family upon their being of an age to take care of it, and give it to his kindred, which is certainly not part of that purpose. But it will be well to see if this sixth article, as claimed to be construed, is a more efficient instrument to carry out the assigned intent than the statutory law of succession without it.
In the first place, it excludes both the brother and sister of the testator, then some of the children, and finally all their grandchildren, whose parent being the testator’s nephew or niece, died before the testator; it has left one-third of the personal property of any one child dying under the prescribed age, and a life estate in a moiety of its share of the real estate to go to its mother, and the residue of its share to go to its sister, to be again snatched from them, and turned over to the kindred, on the death of the last child without issue; and it has finally made a provision which would clearly have been illegal, if there had been more than two children of the testator surviving him. How such an article can be said to have been made to carry out an intent to keep the testator’s property with his kindred is difficult to be understood; the unreasonable exclusion of some, looks -a great deal more like evidence of a design to take it away from them at least.
It is claimed also that the sharing by all the nephews and nieces of the testator of his residuary property, in the event of his children dying without descendants, is a particular intent subordinate to, and different from a general intent that *279 his property should continue in his kindred. I have not been able to discover the difference of these intents, unless the general intent be equivalent to not taking it away from all his kindred, while the supposed particular intent excludes the brother and sister and some of their descendants.
If this last result constitute the essence of such particular intent, it certainly cannot be said to be made by the proposed article subordinate to any intent that the kindred should take, but rather an exception from it.
The same difficulty exists, if the point of the distinction be, that all nephews and nieces are to take, for that clearly is equivalent to some of the kindred taking. The error in this case arises from confounding intent not interfered with by a provision with an intent accomplished thereby, which is the only real legal intent of a provision. That cannot be said to be such intent, which remains the same whether the provisions take effect or not. It is the change made which forms it. The intent of a devise in a will, to the son and heir of a testator, merely of a life estate in his real estate, could not be said to be to keep such estate in his own family, nor could it be so predicated of a devise to collateral relatives on the death of one’s own family.
Two other propositions, contended for on the part of the respondents, appear to me equally untenable; the first, to wit, that the testator was not governed by any particular regard for any particular individual, can only be true if a disregard for those excluded by, was not equivalent to a regard for those included in, such provision. The other is, that the taking of the estate by particular individuals was a subordinate matter, whereas the whole essence of the provision, as proposed to be construed, is the inclusion of some and exclusion of others, who otherwise would have taken.
No intent, therefore, imputable to the sixth article, has been suggested which warrants the insertion of the words necessary to sustain the construction proposed to be given, to its provisions now under consideration.
4 A different construction, put forth in the argument on behalf of the appellants, still remains to be considered, *280 which, but for one difficulty, would be unavoidable. It places the failure of- issue at the testator’s death, and has thus a decided advantage over that contended for oh behalf of the respondents, because it would not make the article under consideration conflict with any previous, provision. The article itself actually begins by providing for 'the testator having no child or children, living at the time of his death; he did not intend, by that, any conflict with preceding provisions for children living after his death; and although the statute which prevents lapses, (2 R. S. 66, § 42,) may, possibly, not be applicable to the provisions of the third article, where the bequests and devises are upon condition; yet the next contingency, to wit, a failure of issue of such children may be proper in reference to the shares of children, dying under the prescribed age, or their interest under the fourth article. No reason is assignable for determining the want of children and failure of their issue at á different time. The term “ such,” specifying the children whose issue are to fail, could not grammatically refer to those whose existence was just denied, and still less to any who should survive the testator, except those who were posthumous, because he has not mentioned any such; it must apply to those dying before him,’ reading,
“ If I have no,” as if it were “ I do not have any.” The conjunction connecting the two contingencies, of course, must be construed copulatively to prevent the whole provision from being void, for uncertainty. (Shuldam v. Smith, 6 Dow. P. C. 22.) He declares the result of the two contingencies to be to leave him without lineal descendants, yet, under the third article he might, upon a child arriving at the destined age, have lineal descendants after his death, who never could take any interest in the personal property thereby given, and he had already provided for the contingencies of a child surviving him. The obstacle to this construction arises from the introduction of the word posthumous, if such include it. The issue of such a child could not fail until after its father’s death, which ' would therefore admit a postponement of the failure of *281 issue until after that period. This is not easily overcome, and is, apparently, fatal to this construction. Even, however, if it should be rejected, the real construction is no nearer being settled, for it leaves the question still open whether such failure of issue be indefinite or on the death of the children. I need hardly add that if this construction prevail, as there is a living child, the provision will fail.
One interpretation, however, of the sixth article, yet remains to be examined, which altogether ignores the question of .the failure of issue, and rests entirely upon the contingency by which the devisees and legatees, in remainder, are to be determined whenever such failure takes place, or rather upon the fact whether there can be any, at such time, to answer the description in the article. It will be found to avoid all difficulty from any illegality of the provisions, make the provision equal and just, carry out a natural purpose, and be assimilated to other provisions in the will, without changing any word or distorting it from its natural meaning, and only supplying a slight omission of an event to be necessarily considered in construing it. This is accomplished by considering the whole article as only intended to provide for the death of his brother and sister before him, leaving him children and grandchildren. Of course, if only one of them should outlive him, and .he had no lineal descendants, such survivor, and the children of the deceased, would take, by the ordinary laws of succession, as his heirs at law, or next of kin; he has permitted a similar result in the case of any of his children dying after him, while another child was alive. This view leads us to investigate who are to take; these are declared to be children left by a brother and sister, and the children of any such children who might die before the testator; the word “any,” of course, refers to children left and not to all children, because there are no other words to distinguish to whom the word “such” refers, and such clause of substitution admits no grand nephews or grand nieces, except the children of such nephews and nieces as could take *282 under the prior branch; for it confines them to the share of their father or mother. This article becomes inoperative in case either a brother or sister should be alive at the time of the determination of the contingency under which their children are to take, because there would be no mode of ascertaining the share of each, and the devise is to the children of both jointly, while the division is to be made only when one of them becomes thirty-four years of age.
This provision, construing the word “leave” in its natural and ordinary sense, overlooks all nephews or nieces who do not survive that one of their parents who was the testator’s brother or sister, unless they die before the testator and leave children surviving, to take their place; the only combination of circumstances which would prevent such a provision from being unequal and unjust, would be if the testator died before the brother or sister, so that no such nephews and nieces could be born. The clause of substitution makes this more certain, for no parent of a grand nephew or grand niece, whose share the latter was to take, could be in a position to derive such share, under the previous clause, without outliving that one of his own parents who was the brother or sister of the testator. And to enable his children to take he was required to die before the testator. Both could not happen unless the testator outlived his brother and sister. If he did not, no grand nephew or grand niece could take; which would make the provision for them useless. This is not inconsistent with an intent to provide for the testator’s kindred, for the brother and sister, and the survivor of them, if one were dead, with the children of the deceased, would still take by the law of succession; and does not rob the testator’s children of any of the- property vested by the third article, or his wife of what she might acquire by the death of one of his children, to give it to collateral relatives. By "contrasting the different consequences of this article, construed merely as referring to the failure of issue at the death of the testator’s children, without reference to the death of the brother and sister, with those produced by it, *283 if the death of such brother and sister, before the testator, be considered necessary to give it effect, we shall be able to see which best carries out the intention : the former excludes a living brother and sister and takes in some of their children and grandchildren; ..of such nephews and nieces, it excludes all born after the failure of issue is determined, or who die before their parents; of such grand nephews and grand nieces, it excludes all unless the testator outlives the brother and sister; a capricious selection without any purpose or policy apparent in the exclusion. There could be no hesitation by any one to pronounce the construction now under examination to be correct, if the words “ at my death,” or “ in my lifetime,” were added after the word “ leave,” as they are are already impliedly there by the impossibility otherwise of providing for a grand nephew or grand niece as a substitute for their deceased parent, being a nephew or niece. Both parties require, for the construction suggested by them, a similar insertion; the respondents desire it, not to carry out a manifest intent, but simply to make a provision legal. The general principle of supplying words is abundantly settled. (Jarm. Pow. on Dev. 37l ; Pond v. Bergh, 10 Paige R. 152.) But these words are eminently privileged to be supplied. In all cases of survivorship, when a different' time is not expressed in the will, the lifetime of the testator is always understood as the period in which it is to take place. (Moore v. Lyons, 25 Wend. R. 119 ; Clark v. Lubbock, 1 Y.& C., [N. C.] R. 492 ; Trotter v. Williams, Pre. Ch. 78 S. C. 3 Eq. Ca. Abr. 344.) The survivorship, therefore, of the brother and sister, by their children, to entitle the latter to take, should be in the testator’s lifetime, as there is no other time fixed ; the rest of the provision corroborates this view.
But it may be asked what the testator’s object was in making such a provision? The answer is simple and easy; for the same reason that he bequeathed in the second article of the will, chattels of which the use is thereby given to his wife for life, to his heirs-at-law in case of his *284 having no child or lineal descendant living at the time of his wife’s death. It may seem at first blush extraordinary that he should bequeath personal estate first to his children and next to his heirs at law. But he evidently was aware of the provision of law to prevent lapses, for he makes no express bequest to his lineal descendants, although, he requires that they should fail before his heirs-'at-law are to take. Without such provision by the statute of distribution, his. wife would have been entitled to one-third of any personal property undisposed of, and the children of any nephews or nieces, who were dead at the time of the testator’s death, would be debarred from any interest in his personal estate if there were nephews and nieces living. (R. S. 97, § 82, subd. 11.) To prevent these two results, the sixth article and the remainder over in the second, were inserted. Children of nephews and nieces who were dead when the testator died would, however, be among his heirs-at-law, although not next of kin, while there were nephews and nieces living. (1 R. S. 752, § 9.)
The only reason, probably, why he changed the phraseology from heirs-at-law to the children left by his brother and sister, and the children of any deceased before him, was, that as his brother and sister, if alive, would be' his heirs-at-law and next of kin, he intended, if his death, although he was the youngest, occurred before theirs, and his own line failed, to allow his wife to take her third under the statute of distribution, who might be fully as dear to him as either brother or sister, but if, according to the more natural course of things, he should outlive them, he.might also outlive her, or could make any other necessary provision for her. In any event, depriving his wife of any interest for the benefit of nephews and nieces, is not quite as inexplicable as depriving her and his brother and sister for the same purpose.
It is somewhat remarkable, in this connection, that while in the third article only the residue of the personal estate, excluding that disposed of in the second, is bequeathed, in this sixth article the whole is disposed of, so as to include *285 even that bequeathed in the second; it would not affect the wife’s interest, as she takes as purchaser for her dower, but might her children, if it were not that the two provisions brought about the same result, except as to the wife’s third, which would be merged in her, a life estate in the whole.
The construction last suggested seems supported upon every sound and known principle; it has a specific purpose, it is not unequal, is warranted by rules of legal interpretation, and does not conflict with any previous provision; it must, therefore, be adopted.
I am fully aware that most of the preceding reasoning is applicable only to the personal estate, as the sixth article was mainly intended for that species of property, but in some things, such as the interference with the interest taken by the testator’s wife and child in the share of the deceased child, the exclusion of a brother and sister, certain nephews and nieces, and grand nephews and grand nieces, who might take by the statute of descent, and some others, it is equally applicable; at all events, it is impossible to construe the .provision differently as to the two species of property; the contingencies in which it is to take effect and the beneficiaries must be the same.
It follows, therefore, that as the brother and sister have survived the testator, the devise and bequest in the sixth article is void; this, of course, will make various portions of the judgment given at special term erroneous, and it must be reversed in those particulars. Thus the clause in the first and second part of such judgment, subjecting the estate of the testator’s daughter to any limitation by the sixth article; that in the fourth, making the estate of the plaintiff, Madame Du Bois (Baronne de Courval,) in the land of which her sister was tenant for life, cease on her own death without issue, and that in the eighth, requiring parties having life estates to keep down the interest on the charges on the estate, together with the whole of the fifth, declaring the children of the testator’s brother *286 and sister to have an interest in such estate, are, therefore, erroneous.
By the death of the testator’s child, Elizabeth, the principal of her share of the personal estate lapses into his estate, whereby his widow becomes entitled to one-third, and his surviving child, or her trustees, to two-thirds thereof. (2 R. S. 96, § 83, subd. 1'.) As she died without issue she inherited jointly with her sister her share of the real estate wherein she had a life estate. Her mother -became entitled, on her death, to an estate for life in the moiety so inherited by her daughter, with remainder in fee to her surviving daughter. (1 R. S. 152, § I.)
The accumulations of the share, to which the deceased daughter was entitled, of the current rents and profits of the real and personal estate of the testator, became her personal estate, and must be administered upon before any distribution can be made of it. In such case the mother and daughter would, each be entitled to equal shares. (2 R. S. 96, § 83, subd. 6.)
Hoffman, J.
—The provisions of the will, irrespective of the sixth clause, and as they took effect on the death of the testator, may be thus stated:
‘ First.—As to real estate:
The devise in the fourth section is to his daughter Elizabeth Sarah, for life; and after her death, to the child or children she may leave, to be divided between them in equal . shares, if more than one child, when he, she, or they, may have attained, respectively, the age of twenty-one years.
By the last clause of the fifth section, the provisions of the fourth section as regarded real estate, are to be extended in like manner to any child or children of the devisor, born subsequently to the date of his will:' “He or she to have in equal parts with his said daughter Elizabeth Sarah, a life estate in said real estate, share and share alike, with remainder to their issue.”
Comparing the fourth section with the fifth section, and *287 giving to the last clause of the latter a superior influence, as being stated in clear legal language, and as not incompatible with the fourth section, I deduce, that the daughters living at the testator’s death took a life estate in the property as tenants in common, with remainder to their respective issue as tenants in common; that the effect of the limitation was to make the issue take as purchasers in fee. (1 R. S. 725, § 28.) That the estate in remainder would vest upon the birth of any issue, and open to let in after-born issue. The postponement of a division until the age of twenty-one, was only to retain a tenancy in common, and prevent a separate vesting in possession, until that period.
Whether the term “issue ” qualifies the term “ children,” or the latter controls the former, is immaterial. Under the case of Chrystie v. Phyfe, (19 N. Y. R. 404,) “ children,” would take as purchasers.
Thus a contingent future estate was created (1 R. S. 723, § 13.) It may be termed a remainder (§ 11), and was created by that name. The issue would take vested estates, as they should successively come into being, should there be more than one; and if but one, that one would take. (Doe v. Ward, 9 Adol. & Ellis Rep. 582; Powers v. Bergen, 2 Seld. Rep. 358.)
Each daughter had thus on the death of the testator, an estate for life, with this contingent future estate, or remainder, in his issue, as they should come into being.
Jls to personal property: the residue was vested in the trustees ; and one moiety for the use and benefit of Elizabeth Sarah ; the other for that of his daughter Mary. Each share vested, with payment postponed, until such daughter arrived at the age of twenty-four years. Each share was to go over to the daughter’s issue, if she should die before the age of twenty-four, leaving issue. The restriction in the third section need not be considered.
With this general view of the operation of the previous clauses of the will at the testator’s death, I proceed to examine the sixth section. It is as follows:
*288 “In case I have no child or children living at the time of my death, or no posthumous child; or in case such child or children should die without lawful issue, and thus I should have no lineal descendants, I give, devise, and bequeath my whole estate, real and personal, to the children whom my brother Robert Ray, and my sister Mary, wife of John A. King, may leave, or the child or children of any who may die before me, (such child or children to inherit only its father’s or mother’s share,) to be divided equally and in equal parts among such children, per capita and not per stirpes, when the eldest of such children shall have attained the age of thirty-four years; and each child who at the time of such division, may be under age, to receive his or her portion on reaching the age of twenty-one years.”
There are five cases comprised in the introductory part of this section. One is that of a child dr children born to him, but none living at his death; another, of such a child or children born to him and having issue, but all dying 'before him; a third, of a posthumous child, dying without leaving lawful issue ; the fourth, of children born to him living at his death, and subsequently dying without issue; and lastly, of a posthumous child dying leaving issue, and such issue dying without issue. These contingent cases are distinct; they would naturally occur at distant periods. It is a reasonable, if not an inevitable conclusion, that the testator had in his mind the occurrence of each case, at a different period.
Thus he looks to the time of his own death, with no child living, clearly meaning no child born, or with no issue of a deceased child living; next, to the time of the birth of a posthumous child, of course, after his death; then, he regards the case of the children born at his death, dying without leaving issue; and again, of a posthumous child, so dying. In each of these occurrences, distinct, and more or less remote, the limitation over is meant to take effect; there would be in each case, none of his lineal descendants; *289 and this is the result prescribed, as the test of the limitation over, taking effect.
Again, each of such events might take place during the lives of his brother Robert and his sister Mary, or of the survivor of them, and might take place after the death of both or of one.
It is insisted that the testator intended the devise over to operate only, in the event of the brother and sister dying in his lifetime. This seems to me inadmissible, incompatible with plain language, and with as reasonable a presumption as any other, that he expected they would survive him. He made his brother Robert one of the executors.
It is with more force urged, that he meant to give effect to the limitation over, on his own death, so that the nephews and nieces to take would be those then living, (with children of any pre-deceased nephew or niece,) whether his brother and sister were then dead or living. But the difficulty which I have found insuperable as to this construction is, that he obviously contemplated his own death, under some circumstances, as one event; and other events which would occur at different periods, on which the will would have its operation, for the operation of the gift over. He discriminates periods, when he discriminates as to events. Had he looked solely to his own death, the clause beginning, “ Or in case such child,” &c., would, not have been used. Had he regarded merely the death of all his children issue-less, the last clause would alone have been needed, with some trifling verbal change.
Another construction of the provision, and one which appears to me more plausible than any which can be found to sustain the limitation over, is, that the objects—the nephews and nieces—are defined and fixed at the death of the survivor of the testator’s daughters, without leaving issue.
This construction commends itself for several reasons.
It sustains the limitation over as a valid one, while, upon the version of its depending upon the death of the *290 brother .and sister, it would be illegal. If the limitation can be supported by a reasonable construction, it is our duty to give it such a meaning. (Jarman on Wills, 2d, 143.)
It avoids an intestacy which, in the other case, will occur. The counsel for the defendants in his second subdivision of his second point has shown that there might be a time between the death of the survivor of the children and the death of the brother and sister in which this would take place. ¿The court leans to a construction which will avoid such an intestacy. (Leake v. Robertson, 2 Merivale R. 386.)
It fulfils in part another important rule of construction, viz., that the court is anxious to comprehend as many of the apparent objects of the testator’s bounty as, by a reasonable construction of the will, looking to the period of distribution, may be included. (Walker v. Shore, 15 Vesey Rep. 123, and cases cited in the American edition of Cox’s Cases in Chancery, vol. 1, page 12, note.) There will in this case be comprehended all the nephews and nieces born after the testator’s death, and before the death of the surviving child, as well as nephews and nieces born in the lifetime of the testator.
But the objections which have at last led me to reject this construction are, that it wholly annuls the word leave in its ordinary signification, and requires the substitution of the words, may at that time have, or may then have, or similar words. The testator seems to have appreciated the force of the term leave. In the fourth section he uses this word in its natural full sense, denoting all the children Sarah might leave. So in the third clause he uses the word leaving issue. In this section he employs the phrase, “In case I should have no child or children living,” &c., and then uses the word leave in the clause in question.
Again, this construction would operate to exclude all the children of Robert Ray and Mary King who may have been born between the death of the survivor of the testator’s daughter and the death of Robert or Mary. I think *291 it clear, that this would disappoint the testator’s intention ; that he meant to include all the nephews and nieces which his brother or sister should leave. All whom they might leave, and the children of those who had died before the testator, would comprehend all, or nearly all, who could claim to be objects of the bounty, as springing from Robert or Mary.
Mr. Powell (on Devises, vol. 2, p. 303, Law Library, vol. 22, p. 102) says : “ Where a particular estate or interest is carved out, with a gift over to the children of the person taking that interest, or of any other person, it will embrace not only the objects living at the death of the testator, but all who shall subsequently come into existence before the period of distribution.”
Thus, in the case of a devise to A. for life, and after his death to the children of B. the children of B. living at the death of the testator, and those who are born during the life of A. the tenant for life, are entitled; but not those who may come into existence subsequently to the death of A. (This is re-stated in the same language by Mr. Jarman on Wills, vol. 2, p. ÍS.)
Among the cases he cites is Ayton v. Ayton, (1 Cox. Cases, 326,) which is the only one of them I deem it necessary to notice at length. It is full and pertinent. The testator gave the residue and remainder of his real and personal estate to his wife Mary Lee, for her life, and no longer. Upon her decease, he gave and bequeathed them to the children of Mr. John Ayton and his wife Jane, to be equally divided among them, the said Jane Ayton’s children, and not to any children by another marriage of either party.
At the death of the testator and his widow Mary Lee, (the tenant for life,) there were but two children living of John and Jane Ayton; but after the widow’s death three more were born. These three children were excluded from any share in the estate, and it was held to go to the two.
The master of the rolls said: “ So many of the children *292 as come in esse before the time when the fund is distributable, shall be comprehended, and no more; the vesting is not to be suspended till other children are born to take away from the shares of the former.” “ The general words will extend beyond children in being, for it will take in any child born before the remainder takes effect, and so far I shall certainly go ; but the decree (a former one in the cause) extended it to all the children of the marriage living at the death of Ayton and his wife.” This part of such former decree was reversed. (See also Walker v. Shore, 15 Vesey R. 123, and Weston v. Foster, 7 Metcalf Rep. 297.)
Powers v. Bergen, (2 Selden R. 358,) is upon this part of the question important. The devise,was to trustees for the use of the testator’s daughter Eliza, for life, and with remainder in fee upon her death, to the lawful issue of his said daughter, if more than one, share and share alike, and for want of such issue, then to all his grandchildren then living as tenants in common, and to his or their heirs or assigns. The daughter was living and had two children. The estates were thus defined. The trustees had the legal estate during the life of Eliza the daughter—the two children had a vested remainder in fee as tenants in common, subject to open and let in after-born children of their mother, but liable to be' divested by their death, during the life-time of their mother. The grandchildren of the testator (other than the children of Eliza) who should be living at her death, (that of Eliza, the testator being Thomas Poole,) had a contingent estate in remainder, depending upon the event of the death óf the daughter Eliza, without leaving any lawful issue surviving her. Reference was made by the court to 1 R. S. 723, §§ 9, 10, 11, and 13.
These authorities sustain the proposition before stated, that nephews and nieces, born between the death of the surviving daughter, and that of the brother and sister, would be excluded. The moment the objects were fixed by *293 the death of such survivor, the estates would become vested, absolute, and exclusive.
That children of nephews and nieces dying between the death of the testator and the death of the surviving daughter, would be also excluded, seems the just conclusion. In the cases before cited, especially that from the Tth of Metcalf, the estates were vested, and not contingent. A death of one party before the death of tenant for life, which transferred a vested interest into one in possession, would operate to transmit his share, or it was capable of' assignment, or testamentary disposition—not so, I apprehend when the interest or estate is wholly contingent. It may be that such children would be excluded upon any construction.
I have, from the considerations thus stated, been led to reject the construction which fixes the ascertainment of the objects and vesting of the future estate, in those nephews and nieces who might answer the description at the death of the surviving daughter of the testator.
There can remain but one interpretation—that which ascertains the objects to take, by and upon the death of the brother and sister. This clearly best comports with the letter of the will, and best carries out the apparent intent. He means to say, whenever the event occurs, in any of the contingencies arising under my will, in which a failure of any lineal descendants shall happen, I devise my estate to all the children whom my brother and sister may leave behind them. Their children are then to be the object of his bounty. He makes no discrimination between them, but remembering there might be nephews and nieces dead before him, he includes their issue in his bounty.
This view would be strengthened, if the children of nephews or nieces, dying between his death and that of the brother and sister, could be comprehended. My impression is, they would not be, but I do not think this exclusion can affect materially the construction now given; more are comprehended than can be upon any other con *294 struction, and the extent of the exclusion is as much limited as it can be by any interpretation.
In Doe v. Knowles, (1 Barn, and Adol. Rep. 324,) the devise was to W. Smith and Mary his wife, and the survivor of them during their natural lives, and then to Mary their daughter, or if more children of Mary, the wife of W. then equally between them, and in case they leave no children, to their heirs and assigns for ever. This remainder, it was held could only become vested when the survivor, who was William, died leaving no children of the marriage; they could not be said to leave children, till both were gone.
In Wells v. Ritter, (3 Wharton’s Rep. 208,) the testator devised to his wife for life, and then to his child or children in fee. If no child should live till twenty-one years of age, then his estate was to be divided between the children of S. and the children of W. The only child of the testator was a posthumous child, who died after the death of the wife, but before twenty-one. It was held that the limitation included children born after the death of the posthumous child.
In Cross v. Cross, (1 Simon’s R. 201,) the residuary estate was given to trustees, to divide the interest between two nieces equally during their lives, and after their deaths, to pay and divide the principal to and among the lawful issue of her said nieces, or of such of them as should leave issue, equally per stirpes and not per capita, in default of such issue to pay the interest to certain persons, &c. One of the nieces died, having had seven children, five of whom only survived her. These five took exclusively. The representatives of the two children who died in their, mother’s lifetime, were shut out.
The important case of Jee v. Audley, (1 Cox. Gas. 324,) deserves consideration. The will was, “ that 1,000/. be placed out at interest during the life of my wife, which interest I give her during her life, and at her death I give the said 1,000/. unto my niece Mary Hall, and the issue of her body lawfully begotten, and to be begotten, and in *295 default of such issue, I give the said l,000i. to be equally-divided among the daughters then living of my kinsman John Jee and his wife Elizabeth Jee.”
John Jee and Elizabeth were living at the death of the testator, had four daughters, and no son, and were seventy years old.
It was held that the devise took in all the daughters who might be born to John and Elizabeth after the death of the testator. There was then-a limitation which would take in daughters born ten years after the testator’s death, and then Mary Hall might die without issue fifty years after-wards ; in which case it would evidently transgress the rules prescribed. The limitations could not be restricted to children living at the time of his death.
In the language of Lord Mansfield, (Cowper Rep. 309,) “when an estate is left on a contingency to the issue of any one, all born before the contingency happens, shall take; none born after.”
The reasoning of Lord Hardwicke, in Ellison v. Airey, (1 Vesey, Senr. R. 115,) involves the same proposition. “ In the case of a remainder,” says the master of the rolls, “the children living at the time the interest vests in possession, are to take.” (1 Cox Ca. 324.) “ Where a gift is
made to children, to take effect- upon the termination of a particular estate, or upon the death of a person, such gift embraces, not only the objects living at the death of the testator, but all who may subsequently come into existence before the period of distribution.” (Denio Ch. J., Kilpatrick v. Johnson, 15 N. Y. R. 325.)
It may be noticed, that in this case, the period of distribution was the period of the vesting of interest. The proposition, I apprehend, is in general more accurately stated, to comprise all who are in being at the period of vesting in interest.
There is a class of cases in which the word “ leaving” has been restricted, and its ordinary signification disregarded, which deserves notice. (Maitland v. Chalie, 6 Mad. Rep. 243; ex parte Cooper, 1 Drew R. 264; in re, Too *296 key’s Trust, 11 Eng. L. & Eq. R. 61; Ibid. 5 De Gex, and S. R. 667; Kennedy v. Sedgwick, 3 Kay and John. R. 540.)
The last case will exemplify the principle which pervades them all. Trustees were directed to stand possessed of the clear residue of the estate and effects, and of all accumulations thereof, upon trust, to pay and divide the same equally to and amongst all and every the child and children of his said daughter Elizabeth when the youngest of such children should attain twenty-one. And in case of the death of his said daughter without leaving any child or children, to the sons, &c., of his late sister Ann. Elizabeth had nine children, all of whom attained twenty-one years. She was fifty-seven years old and a widow.
Held, that there was a gift of the residue under which all the children of Elizabeth acquired vested interests, not' defeasible by her death, leaving no children- The gift over, in case of her death without leaving any child or children, was contradictory if the word “ leaving” was to be read literally, and that the word must be read as equivalent to having.
Thus, in these cases, there was an absolute vested interest first created, which was to be divested by adequate words; and those employed were capable of a construction without undue straining, which would preserve the testator’s original and obvious intention. But in the present case we are to ascertain, from all the pertinent clauses of his will, when the tegtator meant his gift over to vest and whom he meant to be included in it.
What is the contingency in this case, when any nephews and nieces may possibly take ? At present the death of Madame de Courval, without leaving issue. And .when are the nephews and nieces, so defined, that the true parties to take are certain, 'and all others inevitably excluded ? Not until the death of the brother and -sister have produced the impossibility of others coming into being.
I am led to the conclusion that the limitation in the sixth clause is an illegal restraint upon alienation beyond the period allowed by the statute, and is void.
*297 The result of these views may be thus stated:
1st. The sixth section of the will in question is inoperative and void, because it must operate, either to suspend the power of alienation for more than two lives in being at the death of the testator, which was the creation of the expectant estates intended to be limited (1 R. S. 726, §41;) Amory v. Lord, (5 Selden R. 403;) Griffen v. Ford, (1 Bos. R. 123,137 ;) or it could only take effect at the death of his brother and sister before him, and his own death, leaving no lawful issue him surviving.
2d. The adjudging of such section to be void, does not affect or invalidate any of the previous devises, bequests or provisions of the will in question. Those provisions are distinct from and independent of, the limitations in the sixth section. (Parks v. Parks, 9 Paige (R. 107; Irving v. De Kay, Ibid. 528; Haxtun v. Corse, 2 Barb. C. R. 506.)
3d. Hence those other provisions, so far as they extend, and are legal, (as they all are,) must be carried into effect; and if they have not provided for the entire disposition of the property of the testator, in the events which have occurred since his death, the law of descent or distribution must be resorted to.
4th. Prom the death of the testator, on the 21st day of March, 1836, to the death of his daughter Elizabeth Sarah, on the 2d day of April, 1840, the said Elizabeth Sarah was entitled to one-half of the net income of the personal property of the testator, and to one-half of the net rents and profits of his real estate; and the plaintiff Mary, now De Oourval, was entitled to the other half of the same.
5th. Upon the death of the said Elizabeth Sarah, the amount of such income and rents then due her, fell to, and is to be divided between the said Mary, now Madame De Oourval, and Mary Rebecca Ray, mother of the said Elizabeth Sarah, in equal parts.
6th. On the death of the testator, a reversion of the real estate devised to his daughters respectively,' contingent upon the death of either without issue during the life of the other, passed by descent to his two daughters as *298 undevised real estate (1R. S. 123, § 12); and on the death of Elizabeth Sarah, without issue, the half .of the real estate devised to her for life, passed as follows: the one-half thereof to her mother, the defendant Mary Rebecca, for life, with remainder to the sister, now Mary De Courval; and the other half to the said Mary De Courval in fee (1 R. S. 151, § 5.)
1th. From the death of said Elizabeth Sarah to the 9th day of February, 1856, the date of the referee’s report in this case, the said plaintiff Mary (and her trustees, under the marriage settlement), are entitled to receive three equal fourth parts of the net rents and profits of the whole of the testator’s .real estate; and the defendant Mary Rebecca the other one-fourth part.
8th. In relation to personal property : The one-half part of the half to which the said Elizabeth Sarah was entitled, (the limitation over to her issue failing,) devolved absolutely upon her said mother, Mary Rebecca; and the other half thereof to her sister Mary, now Máry de Courval. (2 Rev. Stat. 96, § 15, subd. 6.)
The net income and interest of all the personal estate of the testator, from the death of the said Elizabeth Sarah to the date of the report in this cause, is to be divided among, and is payable to, the said Mary Rebecca and the said Mary de Courval, and her trustees, in the proportion of one-fourth thereof to the former, and three-fourths thereof to the latter.
9th. The one-fourth part of the personal property of the testator, remaining after discharging what may be found due to the said Mary Rebecca Ray and Mary de Courval, and her trustees, upon the principles above stated, belongs, absolutely, the one-fourth part thereof to the said Mary Rebecca, and the three-fourth parts thereof to the -said Mary de Courval and her trustees.
10th. The real estate of the testator now vests or is limited as follows, to wit: The one undivided fourth part in the defendant, Mary Rebecca Ray, for life, with remainder to the said Mary de Courval, in fee; another equal *299 undivided fourth part thereof vests in the said Mary de Courval in fee, and two equal fourth parts thereof in the said Mary de Courval, for her natural life, with remainder to her issue, if any, in fee, and if none, a reversion to the right heirs of the testator, in fee.
The judgment should be modified according to these views.
Bosworth, Ch. J.
—The intention of the testator, that in the event of a failure of his lineal descendants, with the death of his own children his estate should go to his nephews and nieces, is clear.
The first question is this : Do the provisions, which prescribe the time at, or event on which, the nephews and nieces are to "take, make the will void, as involving an illegal suspense of the power of alienation ?
The sixth clause declares first, that if the testator, should “ have no child or children living at the time of his death; and no posthumous child,” his estate shall go to his nephews and nieces. The terms of this clause favor the idea that the testator supposed it possible, that if his child or children died before him, and if he had no posthumous child, his lineal descendants would be extinct at the time of his death. But the sixth clause shows that he contemplated the possibility of his own death before that of his own child or children, and that he intended to provide for that contingency. The sixth clause declares, second, that “ in case such child or children should die without lawful issue, and thus I (the testator) should have no lineal descendants,” the estate shall go to his nephews and nieces.
The testator did not contemplate that a posthumous child would be born in his lifetime, and as he provided for the case of a'posthumous child, and the event of the failure of issue of such child, he clearly intended to provide for the event of a failure, of his own lineal descendants, to happen after his decease, as well as for the happening of such a contingency in his own lifetime.
The fact that it was possible, when he published his will, *300 that he might have more than two children living at the , time of his death, does not render it void, as suspending the power of alienation for a longer period than is authorized by law, as, in fact, there were but two living at the time of his death.
The power of alienation cannot be suspended for a longer period “ than during the continuance of not more than two lives in being at the creation of the estate, except,” ¿so. .(1 R. S. 723, § 15.)
The time of the creation of an estate, the title to which is acquired by a devise by its owner, is the time of the death of the testator; the will then takes effect, and within the meaning of the rule now under consideration, the estate is then created. (2 R. S. 57, § 5 ; 1 R. S. 773, § 1; 1 R. S. 726, $ 41.)
At the time of the testator’s death he had but two children living. The limitation over was, by the terms of the will, to take effect on their death, if they left no lawful issue them surviving. The power of alienation was therefore suspended only during the lives of two persons in being at the creation of the estate, viz., Elizabeth Sarah, and Mary Rebecca Ray, daughters of the testator. It has been expressly adjudged in this court, that lives in being at the death of the testator are alone to be considered, even where a will by its terms continued the estate in trustees during the lives.of three children of the testator whom it named, one of such children having died before the testator. (Griffon v. Ford, 1 Bosw. 123 and 136, 137, 140.)
By no possibility could the power of alienation, by reason of any cause existing at the time of the creation of the estate, be suspended longer than during the lives of the two children living at the testator’s death, if the limitations over can then take effect.
If these views be correct, then it follows that the devise is not void by reason of an illegal suspense of the power of alienation, prior to the time when the estates in remainder are to vest, provided that they vest absolutely on the death *301 of the survivor of the'testator’s said two children. If the devise designates persons in whom it is to vest absolutely on the death of the testator’s children without issue, then there is no difficulty in giving effect to the general intent clearly expressed, that his own children should enjoy the estate during their lives, and if on the death of his own children, their issue shall have become extinct, then his estate shall go to his nephews and nieces designated in the will.
The will is dated on the 22d of March, 1834, the day on which Elizabeth Sarah is proved to have been born.
If it may be supposed that he contemplated it as probable that his own children would survive his brother Robert Ray, and his sister Mary King; and if it may also be supposed that he had in his mind the idea, that he too might survive them, then the language employed in the sixth clause would be natural and appropriate. Supposing his brother and sister to be dead at the time of his own death, and that he had such a contingency in mind when drawing his will, then the expression “ to the children whom my brother Robert Ray and my sister Mary, wife of John A. King, may leave, or (and) the child or children of any who may die before me,” would be clear, and the intent designed to be expressed by it would be obvious.
Supposing him to have had in-mind (when writing the words “ or in case such child or children should die with- > out lawful issue, and thus I should have no lineal descendants,”) the idea, that his own children in that event, would probably have outlived his said brother and sister, then the provision giving his estate to such child or children as such brother and sister may leave, would be equally clear, and the intent equally manifest; and the words ‘‘may leave,” would have effect, as designating children left by his brother and sister, at the time of their death, and would have been used according to their natural and obvious meaning.
On either of these suppositions the intent was, that the estate should vest in the nephews and nieces living at the *302 time the event happened, on which the limitation over was to take effect, and in the children of such as should have died before the testator. But each supposition involves the idea that the brother and sister would die before the testator or before the last surviving child of the testator, if she outlived her father.
But the eighth clause furnishes some evidence that the testator did not, while writing his will, contemplate that his brother .would die before him. By that clause the brother is named as -an executor or trustee to whom (with others) the property is devised in trust, and as one of the persons by whom the provisions in trust were to be executed.
And I think there is much force in the proposition that the clause of the sixth article, viz., “ or in case such child • or children should die without lawful issue, and thus I should have no lineal descendants,” contemplates and refers to the contingency of the death of his own children and of their issue, in the life of their parents, subsequent to his own death; as,the words “ such child or children” include," by express declaration, a posthumous child, and provide for the extinction of its issue in the lifetime of such parent if there should be issue.
The testator evidently intended, that however many children he might have, and might leave surviving him, that his nephews and nieces should not take unless all of his own children died without any lawful issue of their own surviving them.
. Whether he intended that all of his own children should die, without leaving issue surviving them in his lifetime, as a condition to the limitation' over taking effect, is a different question.
But assuming that he did not intend that, and that such a construction should be rejected, then it is clear that he did not intend the limitation over to take effect unless all of his own children died without leaving lawful issue surviving them.
On the latter construction, he has made no provision as to what is to be done with the share of either of his chil *303 dren, between the time of the death of such child and the death of the one who dies last.
By the third clause, the personal estate bequeathed to Sarah Elizabeth, was to be paid into her hands on her attaining the age of twenty-four years.
By the fifth clause, the same thing is to be done with his daughter Mary’s half of the personalty. She was born on the 9th February, 1835, and consequently is over twenty-four years of age.
By the fourth clause, the real estate- is devised to Elizabeth Sarah, with all the rents, &c., “ to have and to hold for her use, benefit and behoof, for and during the term of her natural life, and after her death, to the child or children she may leave.”
By the fifth clause, the provisions of the fourth section, as regards real estate, “are to be extended in like manner to any child or children of mine born subsequently to the date- of this my last will, he, she or they to have equal parts with my said daughter, Elizabeth Sarah, a life estate in said real estate, share and share alike, with remainder to their issue.
Suppose the testator’s daughter Mary, when she dies, shall leave a child or children, her surviving: then, so far as the will speaks upon the subject, what is to be done with Elizabeth Sarah’s half of the real estate ?
The sixth article is the only remaining clause which can be resorted to, to ascertain the intent of the testator.
By the first clause of that article, viz., “ In case I have no child or children living at the time of my death, and no posthumous child,” a contingency is designated, on which the limitation over is to take effect, provided the word “or” which follows it, is to be read as it is written; or if that be not so, then both of said alternative clauses must be read, to ascertain the single and sole contingency on which the limitation over is to take effect.
Did he mean, that if he had no children living at the time of his death, the limitation over should take effect, although such children might have lawful issue then living? *304 That cannot be pretended, because that would be in corn flict with the third and fifth clauses which, in terms, give the estate to the children of his daughters, if they die leaving children.
This first clause of the sixth article to have, when read by itself and alone, any meaning or efficacy, must mean, that his own children must have died before him, without having had, or without leaving lawful issue, and thus construed, it would mean no more than the next succeeding clause imports, unless that provides for the case of their dying subsequent to his death without leaving lawful issue, and the first clause for their dying before him, without leaving lawful issue.
And assuming the second or alternative clause to provide for such a contingency, then the words, “ and thus I. should have no lineal descendants,” would refer to the time of the death of his last surviving child, and refer to that. date, as the one at which a failure of his lineal descendants would occur, and as the time which he intended to designate .by the words “ should have.”
If he had in mind such a contingency, and a contingency to happen after his own death, as the one on which the limitation over was to take effect, then who are the persons designated by the will to take ? Suppose his own children have died without issue surviving them. His widow has been provided for by bequests made in lieu and satisfaction of her dower.
The persons designated as the ones to take the estate, are “ the children whom my brother Robert Ray, and my sister Mary, wife of John A. King, may leave, or the child or children of any who may die before me.”
It is difficult to conjecture why he should give to children of a nephew or niece dying before him, and not to the children of a nephew or niece dying after him, if he con' templated that the limitation over might not take effect until after the death of his own children surviving him. And if he intended to provide for such a contingency by the second or alternative clause of the sixth article, it is *305 equally difficult to conjecture why he intended to exclude nephews and nieces themselves, born subsequent to his own death, and who might be living on the death of his last surviving child.
But he has excluded both, if the sixth article is to be construed as designating, as the nephews and nieces who are to take, only those who might be living at the time of his own death, including the children of such as had died before him.
If the limitation over would be valid in law, on construing the words “ may leave,” as referring to the time of the brother’s and sister’s death, it seems to me that we should find no warrant for wresting from them their natural meaning, and substituting other words which would import those left at the time of the testator’s death; or at the time of the happening of the contingency on which the limitation over is to take effect.
The words “ may leave,” according to their natural meaning, import, as the time to which they refer, the death of the testator’s said brother and sister. (Doe v. Knowles, et al., B. & Ad. 324 ; Cross v. Cross, 1 Simons, 201.)
I find no word or words which, to my mind, indicate an intent that only the nephews and nieces living at the time of the testator’s death, should take, except the provision in favor of the children of nephews and nieces dying before him, to the exclusion of the children of those dying after him, and that intent, if it can be collected from the will, will exclude living nephews and nieces born subsequent to his own death, although born before the event happens on which the limitation is to take effect.
Giving effect to the words “may leave,” according to their natural and adjudicated meaning, will admit all the living nephews and nieces (to be ascertained by the designated event) to a participation in the estate, if effect can be given to the sixth clause of the will as thus construed. Even that would exclude children of the nephews and. nieces who died after the testator, and only them; the other excludes all nephews and nieces born subsequent to his *306 death. And to reach that interpretation, the words “ may-leave ” must be replaced by the words “ may then have,” or by other words expressing the same precise idea.
And the substituted words “ may then have,” must be held to refer to the time of the testator’s death; and if such substituted words, or the words “ may leave,” (the words actually used,) refer, in- the connection in which they are found, to the time of the testator’s death, then it must be conceded, as I think, that the event described' by the clause of which they are a part, viz., the event of the death of •“ such child or children without lawful issue, and thus I should have no lineal descendants,” is an event, as there described, which is to occur prior to his own death.
My mind is, therefore, brought to the conclusion that the sixth clause, by its fair meaning, either makes the death of his own children, in his lifetime, without issue surviving them, a condition on which the limitation is to take effect; or if that construction is inadmissible, that it designates as the nephews and nieces, who are to take on the failure of his lineal descendants, the children whom his brother and sister “ may leave ” at the time of their death.
Either construction defeats the future estate. The first, because the contingency has failed on which it was to take effect. The second, as suspending the power of alienation during the lives of four persons in being at the time of the testator’s death, viz., his two daughters and his brother and sister.
Assuming this conclusion, to be correct, it remains to be considered whether the whole will is void, or only the limitations over ; and whether Elizabeth Sarah’s half of either the personal or real estate is to be treated as undevised estate, at and after her death, or whether her heirs take it as such.
If the whole will be void, then the widow takes one-third of the personalty, and the daughters the residue absolutely in equal shares, and they also inherit the real estate in equal shares, subject to the widow’s right of dower.
If the devisees and bequests to the testator’s children *307 are valid, as I think they are, although the future estate attempted to be created be void, (20 Wend. 564, 22d, Id. 483, 9 Paige, 521,) then the provisions made in lieu of dower, and accepted as such will have effect, and are not to be disturbed.
The half of the personalty given to the testator’s daughter Mary, is hers absolutely, as she has attained the age of twenty-four.
The half of the personalty given to Elizabeth Sarah, if to be treated as unbequeathed,-from and after her death, or in other words, if only the use or income of it for her life (as she died under twenty-four) is bequeathed, then the principal, subject to such use for her life, was distributable, one-third to the widow, and to each daughter one-third. (2 R. S. 96, § 75, sub. 1.) In that view, one-third of that half would go to the mother, one-third to Madame de Courval, and the other third would go equally to the mother and to the sister Mary, under 2 R. S., p. 96, § 75, sub. 6.
But I incline to "the opinion that the third and fifth clauses (inasmuch as the testator left two children) gave one-half of the personalty absolutely to Elizabeth Sarah. In this view, that half of the personalty and its accumulations became, upon her death, the property equally of her mother and of her surviving sister, and should be accounted for as such. (2 R. S., p. 96, §'75, sub. 6.)
Only a life estate in the one-half of the real estate was given to Elizabeth Sarah. The remainder, as to such one-half not having been disposed of, vested at the testator’s death in his two children as his heirs at law.
A moity of his one-half (viz., the part which Elizabeth Sarah took as heir of her father) on Elizabeth Sarah’s death (or one-fourth of the whole) went to her mother for life, and the reversion to her sister Madame, de Courval. ■
The rents and fincóme of the one-half of; the real estate in which M. de Courval has a life estate, and which upon her death, leaving issue, will go to such issue, she is entitled to during her life. If she dies, leaving no issue surviving her, the reversion of that one-half will descend, accord *308 ing to the provisions of the statute, to those entitled to take it as heirs of the testator.
The judgment must be modified according to these views, and the accounts having been modified accordingly, the judgment, as modified, should be affirmed.