Lockridge v. Mace.

## LOCKRIDGE v. MACE, *Appellant.*

### DIVISION ONE.

1. **Executory Devise, Remoteness of.** An executory devise to the unborn child of an unborn child is void.

2. ———: PERPETUITIES, RULE AGAINST. An executory devise must take effect, if at all, within a period comprised within a life or lives in being, and twenty-one years thereafter, with the addition of the period of gestation of a child *en ventre sa mere.*

3. ———: ———. Where a devise constitutes but one disposition, and is void for remoteness, it is void *in toto.*

4. ———: ———: CASE ADJUDGED. A devise to the testator's wife for life, remainder to his son (seven years old) for life, remainder to the son's children for life, remainder to the son's grandchildren in fee, is void, the gift to the son's grandchildren contravening the rule against perpetuities, and with it falling the other devises.

*Appeal from Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

AFFIRMED.

*R. O. Boggess* for appellant.

Even conceding that the devise to the great grand-children is void, the whole of the third clause of the will is not, therefore, void. Sections 4 and 6, page 442, General Statutes, 1865, abolishing entails applies to this case.

*Henry N. Ess* for respondent.

(1) Under the will the four children became tenants in common (not joint tenants) of the land. G. S. 1865, sec. 12, p. 445. (2) The third section is void as creating a perpetuity. Lord COKE in *Partington*

*Case*, 10 Rep. 42*b*; *Wilson v. Cockerill*, 8 Mo. 1; *Vaughan v. Gray*, 17 Mo. 429; *Halbert v. Halbert*, 21 Mo. 277; *Chism's Adm'r v. Williams*, 29 Mo. 288. (3) The remainder in fee to the great grand-grandchildren being void, the whole will fails. 2 Leading Cases in American Law of Real Property, p. 488. (4) No possible application of the doctrine of *cy pres* can be made, which will effectuate the will in any singular particular.

SHERWOOD, P. J.—This litigation, begun in June, 1889, grows out of a contract in writing entered into between the plaintiff and defendant, whereby the former agreed to convey to the latter a certain undivided one-half of real estate, which he claimed under third clause of the will of his father, Thomas J. Lockridge, who as the owner of the land executed the will in 1867, and died in 1868.

Said clause is the following: "*Third.* I do hereby give and devise unto my children now born and which may hereafter be born, and to the issue of their bodies, as a life-estate only, to said two generations, my home farm containing one hundred and twenty (120) acres, situated in Kaw township, Jackson county, state of Missouri, except the reservation of life-estate to my wife hereinafter mentioned, and upon the death of my grandchildren the title in fee-simple to said home place is to vest absolutely in my great grandchildren, their heirs and assigns. It is, however, expressly provided herein that neither my children, grandchildren nor any of them shall ever sell, transfer or dispose of their estate or any interest therein, in and to said farm, under any pretense or circumstances whatever; but that my children and after the death of my children then my grandchildren shall, during their natural lives remain in the sole and actual and exclusive possession, of said home farm, excepting my wife's possession; nor shall

my great grandchildren nor either of them make any sale, transfer or disposition of their interests and estates in said home farm, previous to the death of my grandchildren, and the date at which my great grandchildren may lawfully come into the full right and lawful enjoyment of the lawful possession of said home farm, and should any of my children; grandchildren and great grandchildren make any sale, transfer or disposition of their interests, estate and possession of, in and to their respective shares or portions of my said home farm, in violation of the express provisions of this my last will, then and in that event such sale, conveyance, transfer and disposition of such interest, estate and possession therein shall be invalid, null and void, and such interest, estate and possession, so attempted to be transferred or assigned, shall be forfeited during the lifetime of the descendant so attempting such transfer to my other descendants equally, who have faithfully adhered to and performed the said provisions of this my last will, and kept and remained in possession of said inheritance, but in no event shall such forfeitures affect the issue of my descendant who should violate the provisions of this will, but such issue shall inherit his rights and estate under this will in the same manner as though the ancestor had faithfully performed and conformed to the provisions of this will. And should all of my descendants hereinbefore mentioned at any one time violate the said express provisions of this will, then, during their lifetime, they shall forfeit, from the time of such violation, all their interest, estate and possession in said home farm to my collateral heirs, who may hold same until the death of my descendants who have so violated the express provisions of this will hereinbefore forbidden.''

The fifth clause in the will gave the wife a life-estate in the same land.

Plaintiff tendered a deed for the land; but the defendant refused to accept the same, on the ground that plaintiff only had a life-estate in the land. The plaintiff sought by this proceeding to enforce his vendor's lien.

The cause was heard and determined on the facts already stated, as well as on the following additional agreed facts: "Thomas J. Lockridge, at the time of his death, left a widow, Mary E. Lockridge, and four children, viz.: Charles R. Lockridge, plaintiff in this cause; and three daughters, Nannie J. Lockridge, Nellie McCoy Lockridge and Mary Dudley Lockridge. Nannie J. Lockridge was married to Victor B. Bell, on the twenty-fourth day of June, 1879, and is yet living. Mary E. Lockridge, widow of Thomas J. Lockridge, died a widow on the —— day of ——, 1868. Nannie J. Lockridge was born in April, 1862; Charles R. Lockridge was born June 8, 1860; Nellie McCoy Lockridge was born in January, 1859; Mary Dudley Lockridge was born in 1867. Thomas J. Lockridge was never married but once, and then to Mary E. Nelson, who survived her husband, and died a widow on the —— day of ——, 1868. She was never married but once. Mary Dudley Lockridge died in infancy on the —— day of ——, 1872, unmarried, and without issue. Nellie McCoy Lockridge died in infancy on the —— day ——, 1872, unmarried and without issue. In the year 1886, prior to the commencement of this suit, Nannie J. Bell and husband made and delivered to Charles R. Lockridge a deed for the land in fee simple, of which land that in controversy in this suit is a part. The said Charles R. Lockridge, plaintiff herein, prior to contracting for the sale to defendant of the land in question in this action, had entered into a contract to sell and convey to one Joseph Mariner an

undivided half interest in the same property sold to defendant."

After hearing the evidence, the court gave judgment for the plaintiff in the sum claimed, and decreed the sale of the land for the payment of said sum. Acting on the theory that he and his sister owned the land in fee, it was divided, the south portion of it which contains the land in controversy, being conveyed to plaintiff by his sister.

I.   The question arising on the record is whether the plaintiff is the owner in fee of the land he contracted to convey to the defendant.   The third clause and the provisions of the fifth clause of the will must determine this in accordance with the settled rules of law.   By the plain terms of this will a life-estate is given, *first*, to the wife; *second*, a life-estate to the testator's children; *third*, a life-estate to the testator's grandchildren; *fourth*, an estate in fee to the testator's great grandchildren.   The heart of this cause is involved in this question:   Does the third clause violate the rule respecting perpetuities?   Or in other words are the limitations over to the grandchildren and great grandchildren void, and do the children of the testator take an estate in fee?

Touching this point of perpetuities, an eminent authority says:   "Still the policy of the law is against clogging the free alienation of estates, and, as will be shown hereafter, it has become an imperative, unyielding rule of law, *first*, that no estate can be given to the unborn child of an unborn child; and, *second*, that lands cannot be limited in any mode so as to be locked up from alienation beyond the period of a life or lives in being, and twenty-one years after, allowing the period of gestation in addition, of a child *en ventre sa mere*, who is to take under such a limitation."   1 Washburn on Real Property [5 Ed.] p. 115.

Lockridge v. Mace.

"Not only is the rule, thus modified, imperative in its bearing upon the limitation of an executory interest, but the limitation, in order to be valid, must be so made that the estate not only may, but must, vest in possession within the prescribed period. If by any possibility, the vesting may be postponed beyond this period, the limitation will be void." 2 Washburn on Real Property [5 Ed.] p. 760. Thus, if an estate were limited to A for life, remainder to his unborn son for life, remainder to the sons of his unborn son, the limitation would be too remote, so far as the grandchildren were concerned, and, therefore, void. *Ib.*

Charles R. Lockridge, at the death of his father, the testator, was seven and one-half years old. The will gave him one-fourth interest in the land for life; the remainder to his unborn children for life; remainder in fee to his unborn grandchildren, *i. e.*, unborn children of unborn children. It is clear that at the death of Thomas J. Lockridge no life-estate vested in the children of the plaintiff, Charles R. Lockridge, for none were then in existence, nor does the agreed statement of facts allege that there are any in existence now. And it is equally clear that the fee is not vested in his grandchildren, for the agreed statement does not allege that he has any now. It, therefore, is within the range of probability, that all the grandchildren of Charles R. Lockridge may be born twenty-two years after his death. This probability existed at the death of the testator. This is fatal to the devise according to the following authorities: Thus it is said in a recent work of recognized merit: "It is not enough that a contingent event may happen, or even that it will probably happen, within the limits of the rule against perpetuities; if it can possibly happen beyond those limits, an interest conditioned on it is too remote." Gray on Perpetuities, sec. 214, p. 151.

In 2 Leading Cases in the American Law of Real Property with notes by SHARSWOOD and BUDD, page 487, it is said: "The rule is imperative that to be valid the limitation must, by the terms of its creation, take effect, if at all, within the prescribed period. If the limitation be in such terms that it may or may not take effect within the said time, it is void."

II. The remainder in fee to the great grand-children being void, it must, therefore, remain in the heirs-at-law, and cannot be divested by anything the will contains. Upon this premise these questions arise: What becomes of the estate to Mary Lockridge, widow for life, to Charles R. Lockridge, son for life, remainder to his children for life? Do they share the fate of the clause which attempts to give to the great-grandchildren an estate in fee, or is the will void only in so far as it exceeds the limitation prescribed by law? On this point Sir WILLIAM GRANT, in *Leake v. Robinson*, 2 Meriv. 363, remarked: "Perhaps it might have been as well if the courts had originally held an executory devise transgressing the allowed limits to be void only for the excess, where that excess could, as in this case it can, be clearly ascertained. But the law is other-wise settled."

"Where the limitation, which would fall within the allowed limit, is so bound up with one, which falls without the same as to constitute, in fact, but one dis-position of the property, there the common law will not interfere to save the prior limitation." 2 Leading Cases in American Law of Real Property, p. 488. See, also, *St. Armour v. Rivard*, 2 Mich. 294, where the same doctrine is announced after an able and elaborate citation, and review of the authorities. To the same effect are *Donahue v. McNichol*, 91 Pa. St., *loc. cit.* 78-9; *Hawley v. James*, 16 Wend., *loc. cit.* 120, 121, 126. Guided by these authorities, it must be held that the

third clause of the will, constituting, as it does, but one disposition of the "home farm," must fail *in toto*, and that piece of property must go to the heirs-at-law.

III.  Inasmuch as the children of the testator take as tenants in common under our statutory provisions, and inasmuch as two of those children have died without issue, and the plaintiff has purchased the interest of his sister in the "home farm," it is very clear that his title is valid.

The various statutory provisions which have been cited do not affect the result here announced.  Judgment affirmed.  All concur.

*R. O. Boggess* for appellant.

