CUTHBERT MOCKBEE et al. v. TARVIN C. GROOMS et al.; ALICE STOUT and WILLIAM CHRISTOPHER REYNOLDS, Appellants.

Division One, August 15, 1923.

1. **ELECTION:** Conflict in Claims. Where there is no conflict in plaintiffs' claims to land, it is not proper to compel them to elect between the claims. Plaintiffs in their suit for partition may claim an undivided half as heirs of their father and the other undivided half as devisees of their father's widow, and it is not error to overrule the motion of the defendants, who claim under said widow alone, to compel plaintiffs to elect whether they will claim under their father or his said widow.

Mockbee v. Grooms.

2. ——: ——: **Under Common and General Source.** In a partition suit the plaintiff may claim the entire interest in the land both as an heir and as a devisee from a common source, and also assert title from any other source which will confer title on him.

3. **WILL: Perpetuity: Contingent Vesting of Fee for Twenty-five Years after Death of Life Tenant.** Clauses in a will by which testatrix first creates a life estate in designated land in favor of a named married daughter, and then directs that at the daughter's death the land shall be sold and the proceeds deposited in a named trust company, to remain there and draw compound interest until the youngest child of the daughter, born or to be born, shall have attained the age of twenty-five years, and if no child of said daughter attains to said age the accumulated fund shall become the property of another named married daughter; and further directing that another tract, designated as devised to testatrix's unmarried grandson, shall be sold at her death and the proceeds deposited in said trust company, there to remain and draw compound interest until he reaches the age of twenty-five years, when the accumulated fund is to be paid to him and become his absolutely if he attains to such age, but if he dies before the death of testatrix or before reaching said age said accumulated fund shall be divided between the children of testatrix's daughters who attain to the age of twenty-five years; and further providing that if all of her grandchildren, including said grandson, shall die before attaining to the age of twenty-five years, then "the whole sum shall be set aside and used" for the support of worthy widows and orphans, are void, because violative of the rule against perpetuities. In neither case will the fee necessarily vest in any person living at the time of testatrix's death or within twenty-one years and the period of gestation thereafter. The will does not vest the fee in the grandchildren and simply postpones its enjoyment for twenty-five years; but by its terms the fee does not vest in any of the grandchildren, born or unborn, unless they are alive twenty-five years after the death of all the life tenants.

4. ——: **Effect Upon Valid Devises.** Invalid devises in a will, void because violative of the rule against perpetuities, will not destroy other devises therein afflicted with no such infirmity, unless such other devises are in some manner connected with the void provisions or are dependent upon them, or the will as a whole evinces one general plan of disposition and the testator's intention that the valid devises are not to take effect unless the invalid ones do.

5. ——: ——: **Separate Tracts: Different Purposes.** Where the testatrix, by separate clauses in her will, devised a life estate in one tract to one daughter, and a life estate in another tract

Mockbee v. Grooms.

to another daughter, and a life estate in other tracts to a grandson, and estates in remainder to their respective children, born or unborn, who should attain to the age of twenty-five years, said clauses being void because violative of the rule against perpetuities, a separate devise of her "undivided" interest in another tract to the heirs of her deceased husband, through whom, by electing to take a one-half interest in his estate, she had acquired an undivided interest in the tract, and had thereafter for more than twenty years retained exclusive possession of the whole tract, was in no sense connected with or dependent upon the previous devises to the daughters and grandson, but entirely independent of them, and a ruling that they were void does not affect said devise to her said husband's heirs.

6. ———: ———: **Valid Prior Parol Gifts.** The fact that testatrix had previously made consummated parol gifts in severalty to her daughters and grandson of the tracts which by void clauses in her will she attempted to devise to them manifests an intention that a devise of another tract to the heirs of her deceased husband was not to be dependent upon the validity of said void clauses.

7. **DEVISE TO MOCKBEE HEIRS:** Uncertainty: Identification. Parol evidence of the circumstances surrounding the testator is always admissible for the purposes of identifying both the subjects and objects of his bounty; and a devise of an "undivided" interest in a designated tract to the "Mockbee heirs" is not void for uncertainty, where the evidence shows that testatrix had been the wife of Reuben Mockbee; that upon his death she had elected to take a half interest in his estate, and six years after his death brought suit in partition against named and unknown heirs of Reuben Mockbee, alleging that she owned an undivided half interest in said tract by reason of her election, and his heirs the other half; that there was a decree as prayed, commissioners were appointed, and their report on her motion was set aside, and no further proceedings were ever had in said suit; that about twenty years later and six years before her death certain heirs of Reuben Mockbee brought suit against her to quiet title, that she by her answer asserted ownership of the entire fee by adverse possession, as well as a life estate therein as her homestead right, and said suit was thereupon dismissed for want of prosecution; that after her election she remained in exclusive possession for more than thirty years, paying no rents; that she claimed to own but half the tract; that she was in no way, by blood or marriage, connected with any other Mockbee heirs, and frequently spoke of the heirs of her husband as "the Mockbees," is sufficient, together with a mention twice in her will of "the Mockbee

estate" and the use therein of the word "undivided" in referring to her interest in the land, to identify the devisees as the heirs of Reuben Mockbee.

8. ———: **Means Heirs Living at Testator's Death.** A devise to the "heirs" of Reuben Mockbee is a devise to a class, and means his heirs living at the date of the testator's death, and not the heirs living at the death of Reuben Mockbee.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall,* Judge.

AFFIRMED.

*A. F. Evans* and *Moore, Smith, Aughinbaugh & Ault* for appellants.

(1) The cardinal rule for the construction of wills, to which all other rules must bend, is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law. Griffith v. Witten, 252 Mo. 641; Hardenbergh v. Ray, 151 U. S. 112. (2) The intention of the testatrix must be gathered from what she said in her will, giving effect, so far as possible, to each word she has used therein. It is the duty of the court to construe the will which the testatrix has made, not to speculate upon, or guess at, her intentions, and make a will for her. Wells v. Fuchs, 226 Mo. 97; Board of Trustees v. May, 201 Mo. 360; In re Stephenson, 1 Ch. (Eng.) 75; 66 L. J. Ch. 93; Boston Trust Co. v. Buffum, 186 Mass. 242; Den v. Baskerville, 11 How. 358; 1 Greenleaf on Evidence (16 Ed.) sec. 277. (3) Courts have no power to reform the testatrix's will or to add words to it, or rewrite it, or make a will for her. Wells v. Fuchs, 226 Mo. 97; Board of Trustees v. May, 201 Mo. 360. (4) The ambiguity in the will of the testatrix is patent. It appears on the face of the will itself. In such cases, the rule is inflexible that parol evidence cannot be admitted to supply or contradict, enlarge or vary, the words of the will, nor to explain the intention of the testatrix. The will must be its own expositor.

Davis v. Davis, 8 Mo. 56; Hockensmith v. Slusher, 26 Mo. 242; Campbell v. Johnson, 44 Mo. 247; Willard v. Darrah, 168 Mo. 660; Pate v. Bushong, 161 Ind. 533; Whitcomb v. Dedmon, 156 Ill. 116; Den v. Baskerville, 11 How. 358; Wilkins v. Allen, 18 How. 393; 30 Am. & Eng. Ency. Law (2 Ed.) 675; Robinson v. Allen, 11 Grat. (Va.) 785; Wright v. Denn, 10 Wheat. 245; Hardenbergh v. Ray, 151 U. S. 112; Boston Trust Co. v. Buffum, 86 Mass. 242. (5) In this case, the court must look "at the legitimate evidence, and at that alone." If, after having given full consideration to such evidence, the ambiguity remains, intestacy as to the real estate referred to in the ninth paragraph of the testatrix's will is inevitable. Wells v. Fuchs, 226 Mo. 106; Drake v. Drake, 8 H. L. Cas. 172. (6) Where there is a latent ambiguity with reference to the beneficiary of a devise or bequest, other than charitable, the rule of law generally recognized is that extrinsic evidence of the facts showing the situation and circumstances of the testator, at the time he made his will, such as the amount and character of his property, his relations to his relatives who were the natural objects of his bounty, and their situation and circumstances, is admissible to explain the ambiguity, in order to enable the court to put itself as near as may be in his place and ascertain what he intended to express by the language used. Wooley v. Hays, 285 Mo. 577; Hall v. Stephens, 65 Mo. 670; Morris v. Sickley, 133 N. Y. 456. The cases in which the rule last above stated has been considered and applied may be grouped into six classes as follows: (a) Where the language of the will describing the beneficiary of a devise or bequest applies equally and with legal certainty to two or more persons or sets of persons. Charter v. Charter, L. R. 7 H. L. (Eq.) 364; Estep v. Mackey, 52 Md. 592; Atterbury v. Stafford, 58 N. J. Eq. 186. (b) Where one or more persons answer precisely the name, but do not answer the description, of the beneficiary of a devise or bequest as given in the will. Willard v. Darrah, 168 Mo. 660.

(c)   Where one or more persons answer the name imperfectly but answer precisely the description of the beneficiary.  Gordon v. Burris, 141 Mo. 602; Pemberton v. Perrin, 94 Neb. 718; Morse v. Stearns, 131 Mass. 389; Seigley v. Simpson, 73 Wash. 69.   (d)   Where no person answers precisely either the name or description of the beneficiary, but the name and description together are fairly applicable to a certain person, or persons. Stringer v. Gardiner, 4 DeG. & J. (Eng.) 468, 28 L. J. Ch. 758.   (e)   Where no person answers precisely the name and description of the beneficiary, as given in the will, but one person answers the name and a different person answers the description.   (f)   Where the beneficiary in a will is designated by a nickname.   (7)   The law of this State gives the land in controversy to the children of the testatrix or their descendants, unless she, by her will, gave it, in the maner and form required by the rules of law, to some other person.  The heirs at law are favored by the policy of the law.  Sec. 303, R. S. 1919; Watson v. Watson, 110 Mo. 170; Wright v. Denn, 10 Wheat. 245; Wilkins v. Allen, 18 How. 385; Thorn v. Hall, 41 N. Y. Supp. 1054, 160 N. Y. 661; Early v. Arnold, 119 Va. 500; Society of Most Precious Blood v. Moll, 51 Minn. 277; 44 Cyc. 1445.   (8)   A tenant in common may establish title by adverse possession against common tenants.  Whittaker v. Whittaker, 157 Mo. 342; Chapman v. Kullman, 191 Mo. 237; Armor v. Frey, 253 Mo. 480. (9) Even if the testatrix had named devisees in certain and unequivocal language in paragraph "Ninth" of her will, this paragraph would nevertheless be inoperative and void for the reason that it is a part of a general plan of disposition which failed because all the other provisions which sought to accomplish such plan are invalid and void.   (a)   The provisions of the will wherein the testatrix undertook to make certain devises and to create certain trusts for her children, grandchildren and great grandchildren were invalid, because they violate the rule against perpetuities.  Lockridge v. Mace, 109

Mo. 162; Sheppard v. Fisher, 206 Mo. 208; Riley v. Jaeger, 189 S. W. 1168; Buxton v. Kroeger, 219 Mo. 224. And because the property sought to be conveyed and limited in paragraphs third, fourth and fifth thereof did not belong to testatrix when she died, but did belong to her daughters and grandson, as adjudged by decree of the circuit court at their suit. (b) The will of testatrix constituted one general plan of disposition of her entire estate. Those parts of the will which are thus invalid constitute essential parts of this general plan. On account of their invalidity the general plan failed. Paragraph "ninth" of the will, which is in question, was a part of the general plan, and with the failure of this plan, it must fail. Lockridge v. Mace, 109 Mo. 162; Shepperd v. Fisher, 206 Mo. 208. (10) The court erred in overruling the motion of appellants to require plaintiffs to elect whether they would prosecute their claim to the land as heirs of Reuben Mockbee, or as devisees of Sarah J. Searcy. Jordan v. Transit Co., 202 Mo. 426; Doan v. Holly, 25 Mo. 355; Scott v. Taylor, 231 Mo. 665; State ex rel. v. Railroad, 240 Mo. 50; Newham v. Kenton, 79 Mo. 382; Sidway v. Missouri Land Co., 163 Mo. 373.

*Wilkinson, Wilkinson & Dabbs* for respondents.

(1) Respondents agree with appellants that the cardinal principle of will construction is to get the real intent and purpose of the testator. Griffith v. Witten, 252 Mo. 627; Small v. Field, 102 Mo. 122. (2) To determine the object of testator's bounty or the subject of disposition or the quantity of interest intended to be given, the court may inquire into every material fact relating to the person's interest in the will and the property which is the subject of disposition, and to the circumstances of testator and his family. McMahan v. Hubbard, 217 Mo. 624; Riggs v. Myers, 20 Mo. 239. (3) Whatever may be the rule elsewhere, it is well established in this State that in pursuing the general presumption words may be supplied, transformed or changed in

a will so that the instrument may not perish and the manifest intent of the parties be not defeated by the palpable error of the scrivener. McMahan v. Hubbard, 217 Mo. 624; Thompson v. Thompson, 115 Mo. 67; Ro-Bards v. Brown, 167 Mo. 447; Connoley v. Pardan, 1 Paige, 291. (4) The devise to the ''Mockbee heirs'' does not present a case of ''patent ambiguity.'' It is a devise to a class and parole evidence is permissible to explain to whom the testator intended the bequest to be applied and to identify the Mockbee whose heirs are intended to take. Price v. Page, 4 Ves. Jr. 679; McMahan v. Hubbard, 217 Mo. 624; Evans v. Hayes, 3 N. J. Eq. 204; Marsker v. Williams, 169 Ill. 276; McKee v. Spiro, 107 Mo. 457; Burnett v. Burnett, 244 Mo. 491. (5) When Sarah J. Searcy elected to take one-half of her husband's estate, her homestead could not be considered part of her dower, but she was entitled to her homestead (a life estate) and to one-half of the land in fee in addition thereto by virtue of her election. Adams v. Adams, 183 Mo. 395. The Statute of Limitations could not run against the heirs of Reuben Mockbee as long as his widow had the right to the possession of the land of which her husband died seized. Mrs. Searcy could not, as the owner in fee of one-half of her husband's land and as a tenant for life of the other one-half, start the Statute of Limitations running against the heirs of Reuben Mockbee by any acts or declarations. Schoults v. Lee, 260 Mo. 719; Meddes v. Kenney, 176 Mo. 206; Armour v. Frey, 253 Mo. 337. (6) The devise to the Mockbee heirs in paragraph 9 is a valid provision distinct and independent from the other provisions of testatrix's will and should be upheld. Goldsborough v. Martin, 41 Md. 488; Wheeler v. Fellows, 52 Conn. 247; Lovering v. Worthington, 106 Mass. 86. (7) The court did not err in overruling appellant's motion to require plaintiffs to elect whether they would prosecute their claim to the land as the heirs of Reuben Mockbee or as devisees of Sarah J. Searcy. The plaintiffs are entitled to rely

on any and every title they may possess even though such titles be inconsistent with each other. St. Louis Public Schools v. Railey, 28 Mo. 415; Porter v. Grimes, 151 Mo. 560. (8) The provisions of paragraphs 3 to 8 of the will of Sarah J. Searcy did not violate the rule against perpetuities. Deacon v. Union Trust Co., 271 Mo. 669.

*Montgomery & Rucker* for Mockbee respondents.

(1) Although the meaning of a word or a phrase in a written instrument may be doubtful or uncertain when taken alone, nevertheless, if the meaning of the same can be gathered either from reading the entire instrument or from extrinsic evidence suggested by the instrument itself, the word or phrase is not ambiguous. Such phrases as "my home place," "the heirs of A," do not constitute ambiguities because "that is certain which may be made certain." (2) Every will must be construed in the light of all information that is available of the circumstances of the estate and family of the testator when he made the will, to the end that the court may be in his situation as nearly as may be and may interpret and understand the will as the testator understood it at the time the will was drawn. 2 Underhill on Wills, secs. 909, 910; Willard v. Darrah, 168 Mo. 668; Wooley v. Hays, 285 Mo. 577. (3) The widow's possession and occupancy of the homestead is not adverse to the heirs of the deceased husband. Meddis v. Kenney, 176 Mo. 208; Chouteau v. Riddle, 110 Mo. 366; Hickman v. Link, 97 Mo. 482. The possession of a life tenant can never be adverse to the remainderman. Moran v. Stewart, 246 Mo. 474; 2 C. J. 158, sec. 285, and note 29; Hall v. French, 165 Mo. 439; Givens v. Ott, 222 Mo. 420. (4) Since the plaintiffs were not pursuing two inconsistent remedial rights and were not relying upon claims which were inconsistent with, or destructive of, one another, there is no necessity for the plaintiff to elect which of the two causes of action plaintiffs should

elect to pursue in this cause.  20 C. J. 1.  (5)  The testatrix, having given during her lifetime to her several heirs at law who are the beneficiaries of her will, the identical property which was devised to them severally in paragraphs Third, Fourth and Fifth of her will, the invalidity of said paragraphs as being in contravention of! the rule against perpetuities, made absolutely no difference in the disposition of her property and therefore has no practical bearing whatever upon this cause.

SMALL, C.—Suit to partition three tracts of land, 40 acres, 10.17 acres and 5.87 acres in Jackson County near Kansas City.

In their petition, plaintiffs alleged, that they and certain of the defendants are the heirs of one Reuben Mockbee, deceased, who owned said property, at the time of his death, died intestate, without children, but left Sarah J. Mockbee (afterwards, Sarah J. Searcy), as his widow.  That she elected to take half of said property in lieu of dower, and that she died testate devising her interest in said property to the heirs of said Reuben Mockbee, deceased.  That by reason of the premises the title to said property is vested in plaintiffs and said defendants.  That three of the defendants, to-wit, Allie Stout and Lenorah Davenport, children, and William Christopher Reynolds, grandson, claim an interest in said real estate, as the heirs of said Sarah J. Searcy, but have no interest therein, and are made parties so the court may determine their interest.

Defendants filed motion to require plaintiffs to elect whether they would claim said property as heirs of said Mockbee, or as devisees of said Sarah J. Searcy, which the court overruled.  They then filed answers, putting the allegations of the petition in issue, asserting title in themselves by a counterclaim, and praying the court to adjudge them to be the owners of said property. The reply put the new matter in the answers in issue.

At the time of his death in December, 1878, Reuben Mockbee owned the land in question.  He and his wife,

Sarah J., at that time resided thereon as their homestead. He died intestate, without descendants, leaving his widow and several brothers and sisters and their descendants, as his heirs, under whom plaintiffs claim. His widow married Christopher Reed Searcy, and duly elected to take half of the real estate left by her former husband, Mockbee, subject to the payment of his debts, in lieu of dower therein. She married said Searcy prior to the 19th of September, 1882. She resided upon said property as her home from the time of the death of her first husband, and after her marriage to Searcy, continuously until her death in October, 1916. She left two children by her second husband surviving her, defendants Lenorah A. Davenport and Allie Stout, and William Christopher Reynolds, her grandson and only child of her deceased daughter, Sarah Quintiller Reynolds. Besides her interest in the land in controversy, Mrs. Searcy owned other lands in the neighborhood, a portion of which she acquired at the administrator's sale of other lands of her deceased husband, Mockbee. Mrs. Searcy died testate, leaving a will in words and figures as follows:

"I, Sarah J. Searcy, of Jackson County, State of Missouri, being now in good health and strength of body and mind, but sensible to the uncertainty of life and desiring to make disposition of my property and affairs while in health and strength, do hereby make, publish and declare the following to be my last will and testament, hereby revoking and cancelling all other or former wills by me at any time made.

"First. I direct the payment of all my just debts and funeral expenses.

"Second. I bequeath to my two daughters, Allie Stout and Lenorah Davenport, all my household goods, horse, cow, chickens and other personal property in and about the premises occupied by me as my home in Raytown, Missouri, which I may own or be possessed at my death; and I direct that my two daughters divide such personal property equally and in any way satisfactory to both.

"Third. I devise unto my daughter Allie Stout, and unto her husband, during each of their lives, all of my West farm, save and excepting therefrom the twenty acres purchased from James H. and Mary T. Arnold, the twenty acres purchased from Jacob and Mary D. Crouse, said twenty acre tracts being known and designated as the Arnold Twenty and the Crouse Twenty; and also excepting out of my West farm a strip of ground twenty feet wide along the east side of my West farm, commencing twenty feet west of the southeast corner of the Arnold Twenty acres and extending south along the east side of the twenty acres left me by my father to the country road, which said Arnold twenty acres, Crouse twenty acres and the twenty-foot strip, all as above described, I hereinafter bequeath to my grandson, William Christopher, son of my deceased daughter, Sarah Quintiller. My West farm, with the excepted Arnold twenty acres, Crouse twenty acres and the twenty-foot strip, will therefore have remaining the twenty acres purchased from William Cocks lying immediately west of the Crouse acres, the twenty acres purchased from Bettie Brusau lying immediately south of the Crouse twenty acres, and the twenty acres, except the twenty-foot strip along the east side, lying immediately south of the Arnold twenty acres left to me by my father.

"After the death of both my daughter Allie and her husband, I direct that the real estate above devised to them for their lives shall be sold by my executor to the best advantage and for the best price obtainable and the proceeds of such sale deposited with the Pioneer Trust Company of Kansas City, Missouri, there to remain and draw interest, compounded, at the rate of three per cent per annum; and at the time when the youngest child of my daughter Allie Stout, whether living at this time or to be hereafter born, shall have attained the age of twenty-five years, I direct that all such proceeds, with accrued interest, shall be equally divided between all the children of my daughter Allie Stout who may be living

at the time her youngest child attains the age of twenty-five years. In event all of the children of my daughter Allie Stout are not living at the time her youngest child attains the age of twenty-five years, then it is my direction that if such deceased child or children of my daughter Allie Stout have living children, that such child, or children, of my daughter Allie's children shall receive an equal division of such portion of the money so deposited as would have gone otherwise to his or their father or mother. In event all the children of my daughter Allie Stout shall have died before the youngest child attains the age of twenty-five years and there be no living children of such children at that time, then I direct that the proceeds shall become the property of the children of my daughter Lenorah Davenport, and divided between them as directed in Paragraph Four next following. In the event of the death of the youngest or last born child of my daughter Allie Stout before attaining the age of twenty-five years, the child next oldest shall be considered the youngest child; and, in the event of his death before attaining the age of twenty-five years, the child next older than he shall be considered the youngest child and so on, it being my intention and desire that none of the money so deposited shall be distributed or disbursed until such time as all of the living children of my daughter Allie Stout shall have attained the age of twenty-five years, and at that time the money shall be distributed as above provided.

"Fourth. I devise and bequeath unto my daughter, Lenorah Davenport, during her natural life, my North farm consisting of about seventy-five acres, save and excepting therefrom an eight-acre strip extending from north to south along the entire east line of said farm, which I hereinafter bequeath and devise unto my grandson William Christopher, the son of my deceased daughter, Sarah Quintiller. My North farm, with the above excepted eight-acre strip taken therefrom, will be the forty acres purchased from the Mockbee estate, less the

eight-acre strip above referred to, the twenty acres pur-
chased from John Cocks adjoining said forty acres upon
the west, and the fourteen acres purchased from John
Cocks lying immediately south of said twenty acres. Aft-
er the death of my daughter Lenorah, I direct that the
real estate above devised to her for her life shall be
sold by my executor to the best advantage and for the
best price obtainable, and the proceeds of such sale
deposited with the Pioneer Trust Company of Kansas
City, Missouri, there to remain and to draw interest,
compounded, at the rate of three per cent per annum;
and at the time when the youngest child of my daughter
Lenorah Davenport, whether living at this time or to
be hereafter born, shall have attained the age of twenty-
five years, I direct that all such proceeds with accrued
interest shall be equally divided between all of the chil-
dren of my daughter Lenorah Davenport, who may be
living at the time her youngest child attains the age of
twenty-five years. In event all of the children of my
daughter Lenorah Davenport, are not living at the time
her youngest child attains the age of twenty-five years,
then it is my direction that if such deceased child, or
children, of my daughter Lenorah Davenport having liv-
ing children, that such child, or children, of my daughter
Lenorah's children shall receive an equal division of
such portion of the money so deposited as would have
gone otherwise to his or their father or mother. In
event all the children of my daughter Lenorah Daven-
port shall have died before the youngest attains the age
of twenty-five years and there be no living children of
such children at that time, then I direct that the proceeds
shall become the property of the children of my daugh-
ter Allie Stout, and divided between them as directed in
Paragraph Three next preceding. In the event of the
death of the youngest or last born child of my daughter
Lenorah Davenport before attaining the age of twenty-
five years, the child next oldest shall be considered the
youngest child; and, in the event of his death before at-

taining the age of twenty-five years, the child next older than he shall be considered the youngest child and so on, it being my intention and my desire that none of the money so deposited shall be distributed or disturbed until such time as all of the living children of my daughter Lenorah Davenport shall have attained the age of twenty-five years, and at that time the money shall be distributed as above provided.

"Fifth. I devise and bequeath to my grandson William Christopher, the son of my deceased daughter, Sarah Quintiller, the forty acres out of my West farm known as the Arnold twenty acres and the Crouse twenty acres and the strip of ground twenty feet wide from north to south along the entire east side of the twenty acres adjoining the Arnold twenty acres upon the south. It is my purpose in devising the twenty-foot strip above described to allow an outlet from the Arnold twenty acres to the country road at the south side of my West farm. The property above described is the property intended by me as excepted out of the West farm in my bequest to my daughter Allie Stout. I also devise and bequeath to my grandson William Christopher, the son of my deceased daughter, Sarah Quintiller, all of my south farm, the same being the property where I now live consisting of between nine and ten acres, a part of which was purchased from Sam and Elizabeth Shumate and a part of which was purchased from Sam G. and Vyra G. Robinson, lying east of the railroad tracks at Raytown, Missouri, and the fourteen acres lying west of the railroad tracks purchased from J. J. and Sarah Ann Robinson. And I also devise and bequeath to my grandson William Christopher, son of my deceased daughter Sarah Quintiller, a strip of ground containing eight acres and extending north and south along the entire east side of the forty acres purchased from the Mockbee estate, said eight-acre strip being that property excepted in my bequest to my daughter Lenorah Davenport, it being my intention and purpose in bequeathing this eight-acre strip of ground and in excepting the eight-acre

strip from the bequest to my daughter Lenorah Davenport, that the west fourteen acres of my South farm shall have free ingress and egress to the county road along the north side of my North farm. At my death I direct that the property herein bequested to my grandson William Christopher, and above described, shall be sold by my executor to the best advantage and for the best price obtainable, and the proceeds so derived shall be deposited in the Pioneer Trust Company and there to remain and to draw interest at the rate of three per cent per annum, compounded, until such time as my grandson William Christopher shall have attained the age of twenty-five years, at which time the entire proceeds, with accrued interest, shall become his absolutely. In the event my grandson William Christopher shall die before he shall attain the age of twenty-five years, or before my death, then I direct that the proceeds of the sale shall be divided equally between the children of my two daughters, and deposited and distributed in the manner and under the conditions and provisions as contained in Paragraphs Three and Four above.

"Sixth. In the event all of the children of my two daughters and my grandson, William Christopher, shall die before any attain the age of twenty-five years, and in the further event that no children of my grandchildren shall attain the age of twenty-five years, so that the proceeds of the sales of my properties, as above provided, cannot be distributed in the manner provided in Paragraphs Three, Four and Five above, then I direct that the whole sum shall be set aside and used for the aid and assistance of worthy widows and orphans in distress, under the direction of the Judge of the Juvenile Court of Jackson County, Missouri.

"Seventh. In the event either of my daughters or the husband of my daughter Allie Stout, shall fail, neglect or refuse, at any time, during her or his life, to pay the taxes upon the property herein bequeathed to each for life, then I direct that my executor shall sell

such property in accordance with the provisions herein contained with the same force and effect as at the death of either, and the proceeds be deposited and distributed as in Paragraphs Three, Four and Five provided.

"Eighth. I appoint the Pioneer Trust Company of Kansas City, Missouri, the executor and trustee of this my will, and hereby authorize and empower it to sell and convey all and any of my real estate, in the manner and at the time herein provided, at public or private sale, and to execute and deliver all deeds, instruments of transfer and other writings necessary to pass a proper title thereto. I direct my executor, however, that if it is deemed best and most advantageous to sell any of my real estate for part cash, that in no event shall it be sold for less than one-half of the purchase price in cash and the balance shall be collected and deposited in cash within a period of five years after such sale.

"Ninth. I devise and bequeath to the Mockbee heirs all interest, rights, title or claim which I may have of any and every nature whatsoever in and to the undivided fifty-two acres of the Mockbee estate which lies in Section Five (5), Township Forty-eight (48), Range Thirty-two (32) immediately south of the forty acres purchased from the Mockbee estate and herein devised and bequeathed to my daughter Lenorah Davenport.

"In witness whereof, I, Sarah J. Searcy, have to this, my last will and testament, consisting of seven sheets of paper, subscribed my name this 15th day of January, 1914.

"SARAH J. SEARCY."

Said will was duly witnessed and probated.

About twenty years prior to the making of said will, she had given the real estate described in the third paragraph of her will, to her daughter Alice Stout, who, on the strength of such parol gift, went into possession, made valuable and lasting improvements thereon, and claimed to own said property adversely to all the world during that time. In 1908 she had made a similar gift

of all the land described in paragraph four of her will to her daughter Lenorah Davenport, upon condition that her said daughter should marry Omar L. Davenport and move upon and reside upon said land, which she did in said year 1908, and ever afterwards continued to reside thereon. In the same year, 1908, Mrs. Searcy also gave her daughter Sarah Quintiller the land described in the fifth clause of her will, upon condition that she should marry Cecil Reynolds, and should clear and cultivate said land, and pay the taxes thereon, and pay her mother $100 per year, which her said daughter did prior to her mother's death. After Mrs. Searcy's death, said defendants, Lenorah Davenport, Allie Stout and William C. Reynolds, brought suit in the circuit court of said county, and established their title in fee to said respective tracts of land under such parol gifts of Mrs. Searcy in her lifetime. It was admitted at the trial of this case, therefore, that Mrs. Searcy in her lifetime had disposed of all of said real estate described in said paragraphs three, four and five of her will, prior to her death, to her said children and grandchild. That she had no interest in said real estate and none passed by virtue of her will to her executor or trustee named in said will.

In 1883 said Sarah J. Searcy brought a suit in partition for the property in controversy against certain named and certain unknown heirs of her deceased husband, Reuben Mockbee, in which she alleged that she owned an undivided one-half by reason of her election to take same as the widow of said Reuben Mockbee, and his heirs owned the other half. There was a decree as prayed in the petition at the April term, 1885; commissioners were appointed, who made partition and report, but the judgment and decree in the cause, and the report of the commissioners, were, on motion of the plaintiff, Sarah J. Searcy, in 1888, set aside by the court, and no further proceedings were ever had in said cause.

Certain heirs of Reuben Mockbee, about six years before the death of said Sarah J. Searcy, brought suit

against her to quiet title to the land in controversy in this action. In her answer, she claimed to own the entire fee by adverse possession as well as a life estate thereon as her homestead right. This suit was dismissed for want of prosecution.

A portion of the land was also condemned by the Rock Island Railway Company for right-of-way in 1903. The heirs of Reuben Mockbee were made parties by publication as unknown defendants. In this proceeding $200 was awarded to the owners of the land taken. Sarah J. Searcy claimed to own the whole of it, and the *amicus curiae* appointed for the purpose of hearing and determining her claim, reported in her favor, and on May 6, 1903, the court adjudged that she was entitled to receive the whole award. There was no appearance in said proceeding by any other of the claimants or defendants.

At the trial, the defendant Lenorah Davenport testified, that her mother never claimed to own more than one-half of the land in dispute (except the 5.87 acres). But defendant Allie Stout and others testified that she claimed to own all of the land in controversy at all times. So that, whether her claim was adverse to the heirs of her first husband was a matter of dispute in the testimony.

The court below decreed that the forty acres and the ten and seventeen one-hundredths acres belonged to the plaintiffs and the defendants, who were the heirs of Reuben Mockbee, Mrs. Searcy's first husband, and that the east half of said five and eighty-seven one-hundredths acres belonged to the defendant Andrew F. Evans, and the west half thereof to defendant Allie Stout, and that defendants Lenorah Davenport and William Christopher Reynolds had no interest or part in said real estate.

From this decree, defendants Allie Stout and William Christopher Reynolds duly appealed to this court.

I. Learned counsel for appellants contend that the court erred in not sustaining their motion to require the

plaintiffs to elect, whether they would claim said prop-

*Election.* erty as heirs of said Reuben Mockbee, deceased, or as devisees of said Sarah J. Searcy, deceased. Inasmuch as plaintiffs in substance and effect claim one undivided half as heirs of said Mockbee, and the other undivided half as the devisees of said Sarah J. Searcy, we can see no conflict in such claim. Furthermore, we do not mean to hold that they could not have claimed the whole, both as such heirs and devisees, because a party claiming land under a common source of title, may also assert title to the land from any other source, which could confer title upon him. [Waddell v. Chapman, 238 S. W. (Mo.) 481; Cummings v. Powell, 97 Mo. 536.]

We must rule this point against the appellants. ·

II. Appellants also contend that the will of said Sarah J. Searcy was void on its face because it attempted

*Issues.* to convey title in perpetuity, as to the land mentioned in the third, fourth and fifth clauses thereof. And, furthermore, that the testator did not own said land mentioned in said clauses of her will. That said land constituted the principal estate which the testatrix erroneously thought she was disposing of by her will, and that the forty and ten-acre tracts in question were only devised to the Mockbee heirs pursuant to a general plan of disposition, which the testatrix had in her mind, and which general plan failed, for the two reasons urged, that it violated the rule against perpetuities, and because the testatrix did not own the principal part of the property she attempted to devise.

III. As to whether said will violated the rule against perpetuities: We have no doubt that it did. This court has repeatedly passed upon this question. It is firmly

*Perpetuity.* established, that if an estate is so devised, that the title to the fee will not necessarily vest in any person living at the time of the testator's death, nor within the period of twenty-one years, and the period of gestation thereafter, the rule is violated, and the devise

300 Mo.—30

is void, as an illegal attempt to tie up the title to the property for a longer period than permitted by said rule, and as an endeavor to create a perpetuity, contrary thereto. [Loud v. St. Louis Union Trust Co., 249 S. W. (Mo.) 629; Lockridge v. Mace, 109 Mo. 162; Shepperd v. Fisher, 206 Mo. 208; Melvin v. Hoffman, 290 Mo. 464.]

We think, the devises of the land contained in the third, fourth and fifth clauses of the will in connection with the sixth clause thereof prevent the fee from vesting until twenty-five years after a life or lives in being at the time of the testator's death or when the will took effect. Without repeating said will, which we have set out in full, said third, fourth and fifth clauses, first create a life estate in defendants Allie Stout, Lenorah Davenport and William Christopher Reynolds, and at their death direct that the land devised for life to the two daughters should be sold and the proceeds deposited with the Pioneer Trust Company, to remain there and draw interest compounded at three per cent per annum, until the youngest child of the life tenant, then or thereafter born, shall have attained the age of twenty-five years. And if none of them attain the age of twenty-five years, then the proceeds shall become the property of the children of her other daughter. As to the grandson William Christopher, the land devised to him is directed to be sold at the testator's death and proceeds invested by said trust company and paid over to him when he reaches the age of twenty-five years, at which time, it shall become his absolutely. But, if he shall die before reaching the age of twenty-five years, or before the testator, such proceeds shall be divided between the children of her two daughters, as provided in paragraphs three and four. The sixth clause of the will provides that, if all of her grandchildren, including William Christopher Reynolds, shall die before attaining the age of twenty-five years, and no children of her grandchildren shall attain the age of twenty-five years, so that such proceeds cannot be distributed to any of them, as pro-

vided in paragraphs three, four and five of her will, then "the whole sum shall be set aside and used for the aid and assistance of worthy widows and orphans in distress, under the direction of the judge of the Juvenile Court of Jackson County, Missouri."

It is contended by learned counsel of respondent that title vested in the grandchildren of Mrs. Searcy, as soon as they were born, and that the possession and enjoyment of their estate was simply postponed for twenty-five years after the death of the life tenant or their parents, so that the rule against perpetuities was not infringed. But, we think not, because none of the grandchildren or their children were to get any title at all to any of the proceeds, and it was not to vest in them unless they were alive twenty-five years after the death of all of the life tenants. If all of them were then dead, it was to go over for the benefit of the worthy poor, widows and orphans, under the direction of the Juvenile Court of Jackson County. Consequently, the absolute ownership was not to vest within a life or lives in being at the testator's death and twenty-one years and the period of gestation thereafter. We think this is a clear case of violating the rule against perpetuities as defined and well-settled by the foregoing decisions of this court, which are in harmony with the general law on the subject.

We, therefore, hold all provisions of said will as to the property described in paragraphs three, four and five of said will are void because in violation of said rule.

IV. The difficult question before us is whether the invalidity of said paragraphs three, four and five, or the fact that the testatrix did not own the land described therein at the time she died, or when she made her will, invalidated the whole will, including the 9th clause under which the plaintiffs, as "the Mockbee heirs" claim said land. The land described in said third clause consisted of about seventy-five acres, in said fourth clause about 103 acres, and in said fifth clause about 71 acres, or all together about

*Effect on Other Devises.*

250 acres. All of said real estate, including that in question, was occupied by Mrs. Searcy, and also by her two children, Mrs. Stout and Mrs. Davenport, who lived in their own houses thereon, and her grandchild, William Christopher Reynolds, who lived with his grandmother at the time she made her will and at the time of her death.

In Shepperd v. Fisher, 206 Mo. 208, the husband devised 732 acres of his homestead to his wife for life, and his daughters and his son and their children, born and unborn, the remainder, in such manner as to violate the rule against perpetuities. There was a deed of trust on the home place of some $4000. The rest of his homestead, consisting of about 235 acres, he devised to his sons-in-law, provided they paid off the $4000 incumbrance on the homestead. We held, WOODSON, J., delivering the opinion, that the general plan of the testator was defeated by the failure of the provision for the wife and children and unborn grandchildren. That although separate tracts were devised to the sons-in-law, the devise to them was made to free the devise to the wife and children of incumbrance thereon, and, therefore, the devises to the sons-in-law were connected with the invalid devise to the wife and children and fell with it. The court said on this point (l. c. 245 et seq.):

"The second question presented is, do the devises mentioned in the will constitute one general plan of disposition of the testator's entire estate; and, if so, must the valid devises fall with the invalid, which are mentioned in paragraph one of this opinion?

"The books are full of cases which hold that when the will contains distinct and independent provisions so that different portions of the property or different estates in the same are created, some of which are valid and others of them invalid, the valid ones will be preserved unless those which are valid are so dependent upon the invalid that they cannot be separated without defeating the general intention of the testator. The following cases so hold: Goldsborough v. Martin, 41 Md.

488; Heald v. Heald, 56 Md.'l. c. 313; Haxtun v. Corse, 2 Barb. 1. c. 519; Williams v. Conrad, 30 Barb. 529; Hawley v. James, 16 Wend. 1. c. 144; Palms v. Palms, 68 Mich. 1. c. 361; Saxton v. Webber, 83 Wis. 1. c. 617; Wheeler v. Fellowes, 52 Conn. 1. c. 247; Landers v. Dell, 61 Conn. 189; Lovering v. Worthington, 106 Mass. 86; Ward v. Ward, 105 N. Y. 68; Stout v. Stout, 44 N. J. Eq. 1. c. 487; Monypenny v. Dering, 2 De Gex, M. & G. 145; Hale v. Hale, 3 L. R. (Ch. Div.) 643; Dubois v. Ray, 7 Bosw. 297; Smith v. Smith, 5 L. R. (Ch. App. Cas.) 1. c. 344; De Peyster v. Clendining, 8 Paige, 295; Thellusson v. Woodford, 4 Vesey, Jr. 227, 238.

"But if such a holding would defeat the general plan of disposition made by the will, then the valid devises must fall with the invalid.

"By reading this will it is clearly seen that it was the intention of the testator to preserve intact his 'homestead' in and to his widow for life, and after her death to his two daughters, each to take the one-half designated in the will, and after the death of either of them, then to her bodily heirs, etc. The only thing that seemed to create a doubt in the testator's mind as to that plan being carried out by his executor was the debt of four thousand dollars he owed at the time the will was drawn, and which was secured by a deed of trust on the 'homestead.' In order to get rid of that debt he willed to each of his sons-in-law a certain described portion of the homestead, upon condition that each would pay off and discharge one-half of said debt, and in case they fail to discharge said debt the will authorized the executor to sell the same tracts and apply the proceeds to the payment of that indebtedness, and at the same time manifesting a desire to keep all of the homestead in the family as long as possible by giving the sons-in-law the preference to pay the debt and take the land and not to pass it into the hands of strangers until they refused to pay the debt. Under this state of facts we think there is nothing in the will manifesting the intention of the testator to

create and dispose of separate and independent estates, regardless of the general plan above stated.

"This same question came before this court in the case of Lockridge v. Mace, 109 Mo. 162, and it was there held, in a case where the general plan of the testator was not so well defined as it is in the case at bar, that all the estates devised must fall together, both the valid and the invalid. [St. Armour v. Rivard, 2 Mich. 294; Donohue v. McNichol, 61 Pa. St. 78-9; Hawley v. James, 16 Wend. 120-126.]

"One line of authorities holds that, in all cases where the limitation is void because it is violative of the rule against perpetuities or other rules of law, all estates disposed of by the same will must as a matter of law fall with the void devises. [Tregonwell v. Sydenham, 3 Dow. 194; Casgrain v. Hammond, 134 Mich. 419; Andrews v. Lincoln, 95 Me. 541; Jenkins v. University, 17 Wash. 160; Greene v. Dennis, 6 Conn. 293; Van Kleeck v. Reformed Dutch Church, 6 Paige, 600; Post v. Hover, 33 N. Y. 593; La Farge v. Brown, 31 App. Div. 542, 52 N. Y. Supp. 93; Lawrence v. Smith, 163 Ill. 149; Thomas v. Gregg, 76 Md. 169; Tilden v. Green, 130 N. Y. 29; Gray on Perpetuities, sec. 413; Bigelow's Equity, 17.]

"The ruling of the trial court upon that question was in harmony with the views here stated, and it did not err in holding that the devises to the widow and the two daughters of testator must fall along with the invalid limitation over in fee to their bodily heirs, if they had issue.

"Our learned brother, GRAVES, J., who tried this case in the circuit court, held that the devises made of the two hundred and thirty-seven acres of land, mentioned in paragraphs seven and eight of the will, to Thomas M. Swindell and David E. Sheppard, sons-in-law of the testator, were valid, and decreed that they be permitted to pay off the four thousand dollars indebtedness mentioned in the will, and take the land as therein provided.

"If the conclusions reached by us regarding the provisions of paragraphs two, five and six, that they con-

stitute but one general disposition of *all the lands and tenements* of which the testator died seized, are correct, then we are unable to understand the process of reasoning by which the devises made to them can be upheld, and those to the widow and the daughters of the testator are destroyed. Clearly, it was the intention of the testator in giving the lands to the sons-in-law not only to provide a means by which the indebtedness against the homestead might be paid off, and thereby prevent a sale of it under the deed of trust, but also to thereby keep the whole estate together, intact, among the members of his own family; at least, so long as his widow and daughters should live. The devises to them were more in the nature of a means to attain an end than an object to be *accompanied* by the will. Otherwise, it is reasonable to presume the gift would have been to the daughters rather than to their husbands. We are not prepared to say that the devises to the daughters' husbands would have been made, or were intended to be separate and independent of the general scheme of disposition of all of his property, as shown by the will.

"The authorities cited under paragraph two of this opinion support the views herein expressed."

In Lockridge v. Mace, 109 Mo. 162, the whole home place was involved, and it was held the whole devise failed because of the illegal limitations in perpetuity after the life estates sought to be created.

In Loud v. St. Louis Union Trust Co., 298 Mo. 148, the will provided for a certain specific devise for life in real estate and an absolute bequest of personal property to the daughter, and certain specific devises of land in fee to the three grandsons. The residue of the estate which was the principal part thereof, was by the residuary clause devised to a trustee upon certain trusts, which this court held were void, as infringing the rule against perpetuities, and that the whole trust failed. But in that case, there was no attempt to avoid the prior specific devises and bequests to the daughter and grandsons, and they were not avoided by the decree.

From the above quotations, it is clear that the doctrine of this court is, that before we can hold void other devises in a will because certain devises are void as violating the rule against perpetuities, such other devises must be in some manner connected with the void provisions, or be dependent upon them, or the court must be convinced that the whole will was made pursuant to one general plan of disposition, and that the valid devises would not have been made by the testator without his intention that the invalid part should also take effect in manner and form as in his will provided.

We are satisfied that the general scheme and plan of the will before us was two-fold; first, to provide for her own children and their descendants, and in the very remote contingency of all of her descendants dying without issue, within twenty-five years after the death of the last survivor of the three life tenants, to provide for charity, out of the proceeds of the sale of the principal part, or about 250 acres of her real estate; and, second, to give the balance or residue thereof, to-wit, the 52 acres described in paragraph nine of her will, to the heirs of her deceased husband, Reuben Mockbee; and that the devise to said Mockbee heirs was in no sense connected with or dependent upon the previous devise or disposition in the will, but entirely independent thereof. It related to a separate tract of land, the devisees are entirely different, and it was inspired by a different motive and consideration. The language of said ninth clause indicates that the testatrix did not consider she owned the whole of the land devised therein, because she refers to it, as her interest in "the *undivided* 52 acres." (Italics ours). It is inferable she intended to give back to said "Mockbee heirs" not only their half of said land, but her half also, to fully balance the account for the many years she had enjoyed the rents and profits of their half. In any event, the devise to them is clear, absolute and separate from the devise to her family, and made for some reason sufficient to the testatrix and shows an in-

dependent gift to them, which she desired them to have, regardless of other provisions in the will.

We, therefore, hold that the invalidity of the prior devises in said will in no way invalidated the devise contained in the 9th clause thereof.

V.  For the same reason, it seems to us, the fact that said Sarah J. Searcy, made parol gifts in her lifetime, before she made her will, of the lands embraced in said paragraphs three, four and five, to her two daughters and her said grandson respectively, and that, therefore, nothing passed by such paragraphs, and they were, in effect, void, such gifts in no way invalidated the will as to its ninth clause or paragraph.

*Prior Parole Gifts.*

Said Sarah J. Searcy did not intend her children or descendants to have the whole of her estate, under any circumstances, but she intended that the heirs of her first husband should have the land devised to them by said ninth clause.  We must give the intention of the testator, so far as it is lawful, full force and effect, not only as required by the general principles of law, but as required by Section 555, Revised Statutes 1919, which provides, as follows: "All courts and others concerned in the executions of last wills shall have due regard to the directions of the will and the true intent and meaning of the testator, in all matters brought before them." Inasmuch as said testatrix had already made full provision for her two daughters and said grandson by such parol gifts of the lands attempted to be devised to them by her will, they were not less provided for by reason of the invalidity of the provisions made for them by said will.

We rule this contention against appellants.

VI.  But it is strenuously urged by learned counsel that the devise to the "Mockbee heirs" by said ninth clause is void for uncertainty, in that it is a patent ambiguity which cannot be cured nor made certain by parol evidence.  We do not so understand the law in such cases.

It is always admissible to introduce parol evidence of the circumstances surrounding the testator to identify both the subjects and *objects* of his bounty.

In Hall v. Stephens, 65 Mo. 677, there was a devise to Hiram Stephens and family, and it was held parol evidence showing who constituted the family of said Stephens was admissible. This court, per SHERWOOD, C. J., said: "Although it is well settled that extraneous evidence is not received to vary, explain, contradict or control the terms of a will (1 Redf. L. W. 597, sec. 41); yet it is equally well settled that evidence of surrounding circumstances, of the subject-matter of the devise, and of the persons to be benefited thereby, is receivable, in order to place the court, so far as may be, in the situation of the testator, and, looking from his standpoint, to determine both the subject and objects of his bounty. [Wigr. on W. 101; Redf. L. W. 488, 587, 597 and 598, 600, 621, 623; D. and F. Miss. Soc. Appl., 30 Pa. St. 425; Blundell v. Gladstone, 11 Sim. 467; Ex parte Hornby, 2 Bradf. Sur. 420.] Sir James Wigram, in his learned work above cited, in his fifth proposition, p. 142, says, in reference to extrinsic evidence: 'For the purpose of determining the object of a testator's bounty, or the subject of disposition, a court may inquire into every *material* fact relating to the person who claims under the will, and to the property which is claimed as the subject of disposition, and to the circumstances of the testator and his family and affairs, for the purpose of enabling the court to *identify* the person or thing intended by the testator. The same, it is conceived, is true on every other disputed point, respecting which it can be shown that a knowledge of extrinsic facts can in any way be made ancillary to the right interpretation of the testator's words.' We, therefore, regard the ruling of the court correct in admitting such evidence, and supported alike by reason and authority."

The same rule was laid down in the following cases: Riggs v. Myers, 20 Mo. 243; Creasy v. Alverson, 43 Mo.

13; Thomson v. Thomson, 115 Mo. 56; Gordon v. Burris, 141 Mo. 602; Willard v. Darrah, 168 Mo. 660; McMahan v. Hubbard, 217 Mo. 638-40; Wooley v. Hays, 285 Mo. l. c. 577.

We think the will, itself, and the circumstances shown in evidence, clearly demonstrate that by the words "the Mockbee heirs" the testatrix meant the heirs of her deceased husband, Reuben Mockbee. Her will was made in 1914. In 1883 she brought a suit in partition against the heirs of her said husband, Reuben Mockbee, alleging they owned the undivided half of said property and she owned the other half by election as his widow. It is true, that five or six years before her will was made, the heirs of her said husband brought a suit against her to quiet title, in the answer to which she set up title to the whole by adverse possession. But her daughter Lenorah testified that she never claimed to own but half of the property. The will itself, in said ninth clause, in two places mentions "the Mockbee estate," meaning the estate of Reuben Mockbee, her deceased husband, and besides refers to the property as "undivided." Furthermore, the fact that her deceased husband's name was Reuben Mockbee, and she was in no way, by blood or marriage, connected with any other Mockbee heirs, or ever heard of any other Mockbee heirs, except the heirs of her deceased husband, and frequently spoke of them as, "the Mockbees," irresistibly leads to the conclusion that by the words "the Mockbee heirs" in the ninth clause of her will she intended to describe, as the objects of her bounty, the heirs of her deceased husband, Reuben Mockbee.

We think the learned court was right in rendering its decree in this case, and that its judgment should be affirmed. It is accordingly so ordered. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur.

ON MOTION FOR REHEARING.

PER CURIAM:—A motion for rehearing has been filed by appellants. We have considered it, but are still satisfied with the conclusions of law heretofore announced.

As to the point made by appellants not passed on in our opinion, to-wit, that by the said ninth clause, the heirs of Reuben Mockbee, if any, who were to take as devisees, were his heirs living at the time of his death, and not at the time of the testator's Devise to Class: death, as held by the lower court, we Means Heirs Living at Testator's must also rule that contention against Death. the appellants. It is true, that 40 Cyc. 1482-83, cited by appellants, is as follows: "B. Where the gift is to the heirs or next of kin of another than the testator, it ordinarily refers to the death of such other, unless the context of the will manifests . . . a different time, such as at the time of distribution."

In the case at bar, the evidence showed, that Reuben Mockbee died in 1879. That most, if not all, of his seven brothers and sisters living at the time of his death died before the testatrix made her will, leaving numerous descendants living when testatrix died. The testatrix made her will in 1914, and died in 1916. The text quoted from Cyc. evidently refers to cases where such "other" person whose heirs are given an estate was alive when the will was made and the testator died, because, in a note to Paragraph B, the learned author says: "Where such other dies before the date of the will, it has been held, his heirs or next of kin may be ascertained at the date of the death of the testator." So that, in this case, the rule laid down in the note, and not in the text, is applicable. The devise here was to "the Mockbee heirs" without naming them. It was, therefore, plainly devised to them as a class.

In 28 Ruling Case Law, sec. 234, it is said: "The general rule, therefore, is that a gift to a number of

persons not named, but answering a general descrip-
tion, is a gift to them as a class." In Section 233 of said
volume, it is said: "But under a bequest to a class,
subject to increase or diminution by reason of future
births or deaths, the entire estate vests in such persons
only as fall within the class at the date of distribution."
And in Section 237 of said volume, it is said: "Since a
will speaks from the date of the testator's death, the mem-
bers of a class, where there is a devise to a class, must
prima-facie, be determined upon the death of the tes-
tator."

In this case, the time when the devise to the class
took effect, and when the distribution was to be made,
was the date of the testator's death. Consequently, the
ruling of the lower court on that point, was without error.

The motion for rehearing is, therefore, overruled.